Branden C. Miesmer
MSP AO#3018748
700 Conley Lake Road
Deer Lodge, MT 59722

Plaintiff, pro se

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

BRANDEN CONRAD MIESMER,

        Plaintiff,

vs.

SAM JOVANOVICH; JIM SALMONSEN; BEAU
BALTEZAR; SAMUEL SHORT; ROGER
GUILLORY; DAKOTAH REISTAD; TIMOTHY
BURNETT; TRE KINCAID; DUSTY TATE;
JODI COZBY; Dr. VAUGHN JOHNSON;
CHRISTIAN LARKINS; JALEN HAMILTON;
HEATHER AGOSTINELLI; GINA JOHNSON;
and MATHEW MCMULLEN sued in their
individual capacities,

        Defendants.

CV 25-52-H-DWM

FIRST AMENDED COMPLAINT

TRIAL BY JURY DEMANDED

COMES NOW, Branden C. Miesmer, Plaintiff pro se, whom presents the
following Amended Complaint as a matter of course, a civil-rights complaint
and claim for damage relief as follows:

## I. INTRODUCTION

1. The Plaintiff Branden C. Miesmer brings this action against all
defendants pursuant to 42 U.S.C. §§ 1983 & 1988, to redress the deprivation
under color of state law of Plaintiff's rights, privileges, & immunities
secured by the Constitution of the United States. Plaintiff seeks money
damages to redress & remedy the deprivations of his constitutional rights. In
addition, Plaintiff invokes the Supplemental Jurisdiction of the Court over
related, ancillary, & state law claims. Finally, Plaintiff seeks an award of
attorney's fees & other costs pursuant to 42 U.S.C. § 1988.

FAC-1

## II. PARTIES

### Plaintiff:

2. BRANDEN C. HIESMER AO#3018748 ("Plaintiff") is presently serving a criminal sentence in the custody of the Montana Department of Corrections. At all times relevant to this action, Plaintiff was housed and under the care of Montana State Prison (MSP) at 700 Conley Lake Road, Deer Lodge, MT 59722, where he currently resides. Plaintiff is a highly-decorated war vet and is 100% service-connected for PTSD, TBI, Seizures, Sever-headaches and neuro-cognitive Disorder through the Veteran Affairs. He is also certified as an qualified individual under the ADA being mentally handicapped with the disability of processing and understanding information.

### Defendants:

3. Defendant JIM SALMONSEN at all times relevant to this action was/is employed as Warden of MSP, 700 Conley Lake Road, Deer Lodge, MT 59722, charged with the custody and care of Plaintiff. Salmonsen is the facility's highest authority responsible for the appointment, employment, and oversight of facility staff, and oversight of facility operations generally, and is the ... step before the final appellate authority over inmate institutional grievances and concerns. At all times relevant to this complaint, Warden Salmonsen acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

4. Defendant SAM JOVANOVICH at all times relevant to this action was/is employed as Captain at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722, charge with the care and oversight of Restrictive Housing Unit (RHU) Secure Housing Unit (SHU), High-SIde 1, High-Side 2, and The Admin Building. Defendant .: Jovanovich supervises and manages the Unit Managers or Lieutenants of the foregoing buildings to ensure policies and operations are ran in accordance

FAC-2

with DOC policy. He has since then been promoted to Associate Warden ·
after the commence of this action being filed. At all times relevant to this
action, AW Jovanovich acted under the color of state law. He is hereby sued in
his individual capacity, jointly & severally for those acts and omissions
fully described below.

5. Defendant BEAU BALTEZAR at all times relevant to this action is/was
employed as Lieutenant at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722,
charged with the core and oversight of RHU. Baltezar supervises and manages
the Sergeants and correctional officers (c/o) in RHU & handles the care of the
inmates in RHU. Defendant was formally the Lt. of the Special Response Team
(SRT) and has extensive training with the use of force and the procedures that
go with it. Defendant Baltezar ensures policies and operations of RHU are ran
in accordance with DOC policies. At all times relevant to this action, Lt
Baltezar acted under the color of state law. He is hereby sued in his
individual capacity, jointly & severally for those acts and omissions fully
described below.

6. Defendant SAMUEL SHORT at all times relevant to this action is/was
employed as Staff Sergeant at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722,
charged with the care and oversight of SRT. Short manages and supervises the
actions of one of two SRT teams at MSP. Defendant Short has extensive training
with the use of force and the procedures that go with it. At all times
relevant to this action, Defendant Short acted under the color of state law. ·
He is hereby sued in his individual capacity, jointly & severally for those
acts and omissions fully described below.

7. Defendant DAKOTAH REISTAD at all times relevant to this action was/is
employed as a member of SRT at MSP, 700 Conley Lake Road, Deer Lodge, MT
59722. Defendant Reistad is charged with responding to situations that :

FAC-3

require the use of force and the procedures that go with it. At all times relevant to this action, Defendant Reistad acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

8. Defendant TIMOTHY BURNETT at all times relevant to this action was/is employed as a member of SRT at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. Defendant Burnett is charged with responding to situations that require the use of force and the procedures that go with it. At all times relevant to this complaint , defendant Burnett acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

9. Defendant DUSTY TATE at all times relevant to this action was/is employed as a member of SRT at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. Defendant Tate is charged with responding to situations that require the use of force and the procedures that go with it. At all times relevant to this action, defendant Tate acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

10. Defendant ROGER GUILLORY at all times relevant to this action was/is employed as a member of SRT at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. Defendant Guillory is charged with responding to situations that require a use of force and the procedures that go with it. At all times relevant to this complaint, defendant Guillory acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

11. Defendant TRE KINCAID at all times relevant to this action was/is

FAC-4

employed as a member of SRT at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. Defendant Kincaid is charged with responding to situations that require a use of force and the procedures that go with it. At all times relevant to this complaint, defendant Kincaid acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions decribed fully below.

12. Defendant JODI COZBY at all times relevant to this action is/was employed as a Nurse Practitioner (NP) at MSP, 700 Conley Lake Road, Deer Lodge MT 59722. Defendant Cozby is one of the providers allowed to prescribe medications and other medical treatment for the inmates of MSP and the procedures that go with it. At all times relevant to this complaint, defendant Cozby acted under the color of state law. She is hereby sued in her individual capacity, jointly & severally for those acts and omissions describe fully below.

13. Defendant Dr. VAUGHN JOHNSON at all times relevant to this action was/is emplyed as a doctor at the Deer Lodge Hospital, 1100 Hollenbock Ln., Deer Lodge, MT 59722. Defendant Johnson is a private doctor whom conspired & acted jointly with state officials whom were acting under the color of state law. He has on occasion overseen the medical and care of MSP inmates. He is employed by MSP during those occurences. At all times relevant to this complaint, defendant Johnson  conspired & acted jointly with state officials whom were acting under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions describe fully below.

14. Defendant CHRISTIAN LARKINS at all times relevant to this action was/is employed as Lieutenant at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722, charged with the care and oversight of Comand-Post. He is the Shift-

FAC-5

Commander during the 2nd shift at night. He is the highest authority at. MSP and oversees the operations and handling of exigent circumstances that occur throughout the night. Defendant Larkins supervises and manages the units of MSP to ensure policies and operations are ran in accordance with DOC policies. At all times relevant to this complaint, Defendant Larkins acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

15. Defendant JALEN HAMILTON at all times relevant to this action was/is employed as c/o at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. He is charged with the care and duties of ensuring that work activity is ran in accordance with procedure based on DOC policies. At all times relevant to this complaint, defendant Hamilton acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

16. Defendant HEATHER AGOSTINELLI at all times relevant to this action was/is employed as a Registered-Nurse (RN) at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. Defendant Agostinelli works the medical infirmary and operates throughout MSP to ensure all and any medical needs are fulfilled and ran in accordance with DOC policies. At all times relevant to this complaint, defendant Agostinelli acted under the color of state law. She is hereby sued in her individual capacity, jointly & severally for those acts and omissions described fully below.

17. Defendant GINA JOHNSON at all times relevant to this action was/is employed as a RN at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. Defendant Johnson works the medical infirmary and operates throughout MSP to ensure all and any medical needs are fulfilled and ran in accordance with DOC policies. At all times relevant to this complaint, defendant Johnson acted under the

FAC-6

color of state law. She is hereby sued in her individual capacity, jointly & severally for those acts and omissions descirbed fully below.

18. Defendant MATHEW MCMULLEN at all times relevant to this action was/ is employed as a RN at MSP, 700 Conley Lake Road, Deer Lodge, MT 59722. Defendant McMullen works the medical infirmary and operates throughout MSP to ensure all and any medical needs are fulfilled and ran in accordance with DOC polices. He also works the medical center at Riverside which is under and part of the Department of Corrections (DOC). At all times relevant to this complaint, defendant McMullen acted under the color of state law. He is hereby sued in his individual capacity, jointly & severally for those acts and omissions described fully below.

## III. JURISDICTION & VENUE

19. This action is brought pursuant to 42 U.S.C. §§ 1983 & 1988 to redress the deprivations of past and present violations of the Fourth & Eighth Amendments to the Constitution of the United States.

20. The Jurisdiction of the Court is founded upon 28 U.S.C. § 1343.

21. This Court has Jurisdiction over the Plaintiff's state-law claims; Assault & Battery; Sexual Assault & Battery; The Intentional Infliction of Emotional Distress; under the doctrine of Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367.

22. All the acts, omissions, and events complained of herein took or take place in the County of Powell, State of Montana, & within the Venue of this Court.

23. The amount in controversy exclusive of interest and costs exceeds the sum of $5,000,000.00.

## IV. PRISONER STATUS

24. Plaintiff is a convicted and sentenced state prisoner.

## V. PREVIOUS LAWSUITS

25. Plaintiff has filed one (1) civil-suit. It was dismissed as time-barred on 10/15/2020 by Judge Dana L. Christensen. see, Niesmer v. Smith, 2020 U.S. Dist. LEXIS 191306.

## VI. STATEMENT OF FACTS

26. In the year of 2020, before Plaintiff was transferred out of Montana he was under the care of Warden Jim Salmonsen and Dr. Cory Sonnecann. Plaintiff had the designation of Severally Mentally Ill (SMI). Even though he was only 10% service-connected for tinitus and 0% for PTSD via Veteran Affair.

27. AW Sam Jovanovich was the Unit Manager in RHU and had knowledge that Plaintiff was SMI and had spent some time on the Mental Health Block before he transferred out-of-state.

28. Captain John Sharkey whom has replaced the position once held by the newly appointed AW Jovanovich was the Sergeant in SAU (where the mental health block is located) and had knowledge that Plaintiff was SMI and had spent some time on the mental health block before being transferred out-of-state.

29. In January of 2021 Plaintiff was transferred from MSP to a level (6) Supermax in Virginia named the Red Onion.

30. In June of 2022, Plaintiff was transferred from Virginia to New Mexico. He was subsequently placed in solitary confinement with little to no property on 02/13/2023 and was housed there until he was transferred back to MSP on 02/20/2024.

FAC-8

31. Since 02/13/2023 Plaintiff has been in solitary confinement with little to no liberty, property, or life.

32. On 08/30/24 Plaintiff was placed on detention status housed in RHU lower A6.

33. Lower A6 does not have a working light since it has been broken for many months long before 08/30/24.

34. On 09/14/24 Plaintiff was taken off detention but remained in solitary confinement pending a write-up for threatening c/o Carpenter. This write-up was false and fabricated ordered by Defendant Baltezar in order to further demean and degrade the Plaintiff for something he did not do. see, ( Smith's Declar. ¶5, and Rainbow's first Declar. ¶¶2-3).

35. On 09/18/24 Plaintiff was found guilty and punished for threatening c/o Carpenter.

36. Plaintiff sends several OSR's "kites" to Defendant Jovanovich pleading his innocence & stressing his mental health.

37. On 10/09/24 Plaintiff spoke with Dr. Sonnemann in regards to his mind detororating and how he needed to be put back on some medications because he was having some crazy thoughts. Dr. Sonnemann agreed on a psychotropic however he also wanted to add a anti-psychotic although the Plantiff declined the latter. The doctor said to give a week. see, Exhibit 110

38. on 10/12/24 Plaintiff was placed back on detention for the very same light that was broken for months.

39. 10/21/24 Platiff asks RN Mark about his psych meds during mental health rounds. see, (Exhibit 110).

FAC-9

40. 10/28/24 RN Mork tells Plaintiff that Administration got involved and terminated the order for psych-meds. see,(Exhibit 110).

41. 10/29/24 (1300) In RHU A-pod while in handcuffs Plaintiff having a psychotic break lashes out at c/o Smith with a homemade weapon leaving him with no physical injuries.

42. When Plaintiff was tased and subdued he was still in handcuffs.

43. A code was then called bringing SRT, Jovanovich, Baltezar and several others outside A-pod and spoke with Plaintiff through the pod's food-port.

44. Plaintiff then calmly surrendered his weapon by sliding it under-neath the pod's sally-port door. see, (Heng's Affidavit ¶2; Southwell's Aff, ¶2).

45. Plaintiff next layed down as instructed with his hands & arms extended out in front of him.

46. Defendant(s) Jovanovivh, Baltezar, Short, Tate, Reistad, Burnett, & Kincaid all entered A-pod where Guillory jumped on Plaintiff with a riot shield being overly aggressive then the rest of SRT placed Plaintiff in leg-irons, then handcuffed his hands behind his back. see, (Southwell's Affidavit ¶3).

47. Plaintiff then had a spit hood put over his head that prevented him from seeing.

48. Plaintiff did not resist or put up a fight. see, (Southwell's & Heng's Affidavit ¶2).

49. Defendant(s) Guillory, Burnett, Tate, Reistad, Kincaid, & Short

being supervised by Jovanovich & Baltezar all collectively removed Plaintiff from A-pod & escorted him to SMC-2.

50. SMC-2 is one of two Safety Management Cells in RHU. They are designed to house inmates feeling suicidal or can be used as a "dry-cell".

51. These SMC cells are known to be filthy with vomit, feces, and hair all over & this was no exception. There is a exam room right next door w/ bed

52. Defendant(s) Guillory, Burnett, Tate, Reistad, Kincaid, & Short next threw Plaintiff face down on his stomach on the unsanitary floor.

53. Plaintiff's cloths were cut off in a very violent manner.

54. At this point the entire situation was under control. The weapon secured with the Plaintiff subdued, stripped naked, & fully compliant.

<u>SEXUAL ASSAULT AT MSP</u>

55. Jovanovich & Baltezar then asked Plaintiff what was inside him. Plaintiff replies, "nothing.".

56. Plaintiff remembers being confused by this question since he was not resisting and already gave up everything to include all his cloths.

57. Cozby then entered SMC-2 & falsely announced herself as a doctor.

58. With defendant(s) Reistad, Burnett, Kincaid, Tate, Short, & Guillory still holding Plaintiff down Cozby was ordered by defendant(s) Jovanovich & Baltezar to shove her fingers inside Plaintiff's rectal cavity which she did without warning. see, (Ex. 117).

59. Plaintiff realizing what was happening started clinching his anus

upon the touch of defendant Cozby preventing her from going inside his body.

60. Plaintiff was further confused because he knew their was nothing sticking out of his rectum since he was able to clinch & defendant Cozby was unable to initially breach Plaintiff's anus. see, (Rainbow's 2nd declar. ¶2).

61. Defendant(s) Raistad, Burnett, Kincaid, Tate, Guillory, & Short then started applying a magnitude of weight on Plaintiff's pressure points inflict-ing a substantial amount of pain simultanously screaming, "Stop Clinching!!! Stop Clinching!!!".

62. Defendant Cozby with her 2nd attempt then forces herself inside Plaintiff's rectal cavity rummaging her hand inside him tearing him up & causing complete shock, dismay, severe pain, & discomfort.

63. Plaintiff not believing what was happening started to panick yelling, "yo what the fuck! Stop! Stop!".

64. Defendant Cozby then declares there is something inside Plaintiff but she was unable to retrieve it. see, (Ex. 117).

65. Cozby's touch was not careful, slow, or gentle. On the contrary this contact was very fast, rough, & violent. It did not feel like a safe medical procedure designed to allay fears & concerns but was made with complete disregard to Plaintiff's health, dignity, & safety.

66. Plaintiff remembers thinking their was nothing that would have led defendant(s) to know there was something inside him. With this realization he knew without a doubt he was being abused, punished, & tortured for his altercation with c/o Smith.

67. Defendant(s) Raistad, Burnett, Tate, Kincaid, Guillory, & Short was then ordered by defendant(s) Jovanovich & Baltezar to secure Plaintiff into a bodywrap.

68. Defendant Jovanovich now taking a sitting position on the suicide bed next to Plaintiff asks, "Whats inside you?" Plaintiff replies, "look its just an address book."

69. Jovanovich then asks Plaintiff if he would willingly give it to them or do they have to take him to the hospital.

70. This was the first time Plaintiff was given a choice to comply to or even the option to surrender his address book.

71. Before this defendant(s) did not care to ask Plaintiff or even cared what he thought. They did not care about how he felt or the physical & emotional damage they were creating.

72. In those moments the Plaintiff was being tortured. He was being raped. The message was very clear. That he was nothing to them & that they can take from him what they want, however they want; and there is nothing he can do about it.

73. Plaintiff tells Jovanovich that he was not trying to go to the hospital & if they want it that bad then they can have it.

74. SRT Raistad, Burnett, Tate, Kincaid, Short, and Guillory were then ordered by Jovanovich & Baltezar to take the Plaintiff out of the bodywrap & stand him up.

75. Plaintiff is still in full restraints and a spit hood.

76. Plaintiff then started pushing his bowels in an attempt to pass his

address book causing feces to sludge down his backside.

77. In these moments Plaintiff was still very much in shock. He was numb & oblivious to the fact he was pushing feces down his legs. His only concern was to do whatever he had to do to prevent these guys from assaulting & hurting him again.

78. Unfortunately the damage that Cozby did by sticking her fingers inside Plaintiff was already done. Cozby's attempt to retrieve the item only accomplished shoving his address book pass his intestional tract wall into his intestines.

79. While the Plaintiff was clearly trying to comply & push out his address book having feces running down his legs--Cozby was then ordered by Jovanovich & Baltezar to further abuse, degrade, & assault the Plaintiff by jamming her fingers inside his anus a 2nd time. sea, (Ex. 117).

80. Upon completion of Cozby's perversive assault she declared that she could not feel anything.

81. Plaintiff remembers feeling like he was just ganged rape & used up. Having his only shread of dignity & intimate part of his body violated. Standing there naked in full restraints, covered in feces in a room full of people he was not even human anymore.

82. Jovanovich & Baltezar then ordered Reistad, Burnett, Tate, Short, Guillory, & Kincaid to prepare the Plaintiff to be transported.

83. Plaintiff still covered in feces was placed back in the body wrap device preventing him from moving even an inch.

84. FAC. ¶¶42-83, all transpired within five (5) minutes.

85. Short, Burnett, & Reistad then pushed Plaintiff in a cart across the prison frounds to the main gate.

86. While waiting for transportation the Warden Salmonsenwalked up to Plaintiff & defendants on his phone but was just getting off it by the time he got next to the cart.

87. Salmonsen said, "you know how hard it was to convince the hospital to do this?". Then said to Plaintiff, "Look at me you piece of shit. Your ass is mine now.".

88. Based on what just happened & what was about to happen Salmonsen's comment placed Plaintiff in a constant state of fear & anxiety that never left

89. Once the vehicle arrived Plaintiff was loaded into the vehicle & taken to the Deer Lodge Hospital along with Short, Burnett, Kincaid, & Reistad.

90. MSP has procedures in place such as MSP policy 3.1.17A & 3.1.17B that goes into depth on protocal when there is reason to believe an inmate has concealed contraband in the rectal cavity or has swallowed contraband. They are to be isolated in a drycell that has no running water but has multiple cameras. Such as SHC-2. A geurd is posted outside the cell until he passes item in a bowel movement & staff enter the cell to retrieve it or the inmate hands it over.

91. MSP also has a procedure MSP policy 3.1.17C to ascertain if an inmate has an object inside his body by utilizing the bodyscanner that MSP acquired for just this purpose.

92. The drycell & Bodyscanner as discussed in MSP policy 3.1.17A; 3.1.17B; 3.1.17C are in place to promote body integrity & human dignity. These

93. policies further discuss the highly restricted body cavity search that is strictly forbidden to be conducted by anyone within the facility. There are no exceptions.

94. MSP in addition, has policy HS G-0.40 that corroborates on the body cavity search being highly forbidden to be conducted by anyone within the facility. This highly restrictive procedure is only to be done by a physician (not employed by MSP) at a hospital.

## SEXUAL ASSAULT AT HOSPITAL

95. About a ten minute drive later Plaintiff arrives at the Deer Lodge Hospital with Short, Burnett, Kincaid, & Reistad.

96. As soon as Plaintiff entered the Hospital Plaintiff was pushed into one of the back rooms by Short, Burnett, Kincaid, & Reistad whom were present for the entire duration at the hospital.

97. Plaintiff immidiately refused medical attention.

98. After Plaintiff was scanned by Dr. Johnson the doctor then left the exam room.

99. Once Johnson came back in the room the Plaintiff explained he just had two (2) cavity searches & how the item was just an address book followed by a description of its demisions & was eager to pass it naturally.

100. Plaintiff suggested a cup of coffee & a toilet with some time.

101. Plaintiff was given a cup of decaf coffee & sat on a portable toilet for about half an hour.

102. Plaintiff explains to Short how this has never happened before &

does not understand what the issue is.

103. Plaintiff requests that he be allowed to manually inspect his own rectal cavity with one (1) free hand.

104. Short agrees to uncuff one (1) of Plaintiff's hands. Short 1st puts on his latex gloves tight around his hand with his other hand snapping it back repeatedly in a gesture which was understood all too well. (Either hurry up or we will come get it). Short, Reistad, Burnett, & Kincaid all started laughing at this making Plaintiff feel embarassed, degraded, & scared.

105. Plaintiff used his one (1) free hand to check inside his own rectum & was afraid to discover their was nothing there. Plaintiff then let Short know how there is nothing in his rectal cavity then was placed back in handcuffs.

106. Johnson then comes in to let Plaintiff know he is going to administer a cavity search. Plaintiff pleads with Johnson not to do this & to give him more time.

107. Johnson without considering this positioned the fully restrained Plaintiff on his side & abruptly stuck his fingers inside Plaintiff's anus making him feel violated & uncomfortable by this unwanted perversive contact.

108. Plaintiff continues to protest Johnson's offensive contact yet was not trying to give Short, Reistad, Kincaid, & Burnett any reason to hurt him again.

109. Plaintiff exspierences a surge of pain & discomfort by Johnson's contact whom then announces that there is nothing there.

110. Johnson then leaves the room and comes back with a massive surgical

device called a speculum. This instantly instilled a wave of fear over Plaintiff whom begged Johnson not to use that on him.

111. Johnson then threatens Plaintiff that if he did not comply he would go to Missoula where it would be much worse.

112. Short, Burnett, Kincaid, & Reistad all stood up at this motion as if to enforce this threat.

113. Plaintiff was then given a mild sedative to help relax.

114. Despite the sedative Plaintiff could not relax & continued to beg the doctor not to do this, as Johnson was inserting the speculum inside Plaintiff's rectum.

115. Johnson pushed the device all the way up against the Plaintiff's intestional tract wall causing a magnitude of severe sharp pain.

116. Plaintiff next started bucking & trying to pull away which only made the pain worse since Johnson started to scrape & attempt to push the device into Plaintiff's intestines causing him to scream.

117. Johnson instantly stopped the procedure & declared he cannot see anything.

118. Plaintiff latter attains Dr. Johnson's medical report that explains that Johnson only stopped because he could see through the speculum that bloody mucosa was forming inside Plaintiff's rectum. see, (Ex. 119).

119. Furthermore, Dr. Johnson instructs  Dr. Paul Rees (Medical Director for MSP) to return Plaintiff to the emergency department should he exsperience worsening symptoms including abdominal or worsening rectal pain, fever, new or concerning symptoms. see, (Ex.  120).

120. Plaintiff was next transported back to MSP where he was brought to the infirmary & placed in cell #7.

121. Cell #7 is a drycell with no running water & equipped with several audio/video cameras.

122. Here Plaintiff was deprived of all his articles of clothing & told he was not to have any food or water until he passed his address book.

123. Plaintiff did not recieve dinner or any water until morning.

124. Throughout the night Plaintiff would continuously push out bloody mucosa once in a bucket outside of cell #7 during a supervised bowel break & the rest of Plaintiff's bowel movements were done in the corner of cell #7. see, (Ex. 117).

125. The following morning around (1000) with the help of laxatives Plaintiff naturally passed his address book.

126. Plaintiff follows this up by unwrapping the cellophane from the once secreted item in order to show the camera the contents within, which consisted of a paper address book rolled up with a syringe individually wrapped up inside.

127. Plaintiff surrendered these contents to SRT Tate without incident as promised.

128. Plaintiff was taken to the admin building to be scanned in the bodyscanner. This manifested imagery that confirmed Plaintiff was clear of anything more apart from what he already had surrendered.

129. FAC, ¶¶42-129, all transpired within twenty-four (24) hours.

## DELIBERATE INDIFFERENCE TO SAFETY & MEDICAL

130. Between the physical & psychological trauma the Plaintiff just endured he could not eat any food for sixteen (16) days missing forty-seven (47) meals & losing 40lbs. This started 10/30/24 & ended 11/15/24.

131. Between 10/30/24 & 11/15/24 Plaintiff continued to reach out to leadership & PREA without any result.

132. 11/1/24 through 12/1/24 Baltezar & Jovanovich ordered Plaintiff to undergo a strip cell for thirty (30) days being completely deprived of shoes, books, towels, rags, extra clothing, pillow & writing supplies. He was placed on a "paper restriction" & was not allowed to have any pens or paper.

133. 11/1/24 through 12/1/24 Baltezar & Jovanovich wanted to further humilate & degrade the Plaintiff by tossing his cell & stripping him out daily for thirty (30) days. Here he was made to squat & cough exposing his anus and genitals for visual inspection.

134. For these (30) days all interactions, cell/body searches were conducted soley by defendant(s) Short, Guillory, Kincaid, Burnett, Tate, and Roistad which was a daily reminder of being brutally sexually assaulted.

135. There were several times when there was no opportunity for Plaintiff to acquire any contraband because he did not leave his cell between searches.

136. There was many times during these (30) days when Plaintiff would be sleeping. He would be made to strip out, squat, cough. & cuff up. Short, Tate, Burnett, Guillory, Kincaid, & Roistad would toss his cell just to put him back inside the same cell only to redo this very same process the next day.

137. Plaintiff sends medical (med) kite reporting he has had no food or wat :

water for sixty (60) hours on 11/02/24. see, (Ex. 123).

138. On 11/04/24 Plaintiff send med kite reporting no food or water for five (5) days. see, (Ex. 124).

139. On 11/06/24 during the (1530) pillcall Plaintiff informed RN Agostinelli that he has not ate or drank anything for seven (7) days and is having chest pains, and feeling dizzy. Agostinelli said in a hostle tone to drink water and walked away. see, (Ex. 104); (Southwell's Aff., ¶7).

140. Plaintiff then let inmate (i/m) John Southwell in Upper A7 in the vent know that he was about to go down & to pay attention & notify the gaurds if he does. see, (Southwell's Aff., ¶8);(Heng's Aff, ¶3).

141. Next thing Plaintiff remembers is laying on the ground in his own blood with SRT Tate on top of him with a shield along with the other SRT team.

142. Plaintiff was placed on his bed where Tate had to physically hold him up to prevent Plaintiff from  passing out.

143. Defendant(s) Gina Johnson & Mathew McMullen then entered Plaintiff's cell to give an assessment then left to discuss something in the pod.

144. I/m Jordan Keefe & John Southwell could overhear defendant(s) G. Johnson & McMullen talk about the Plaintiff. G. Johnson tells McMullen, "We have to take him to the infirmary." sounding very concerned. McMullen responds "No way! You know what he just did? Fuck him!". see, (Southwell's Aff, ¶9).

145. Defendant(s) G. Johnson & McMullen came back to Plaintiff's cell with an IV bag. Defendant Tate orders the two (2) nurses not to give the IV bag to Plaintiff & said that he can just drink water.

146. RN G. Johnson then offers to provide gatorade packets later on.

147. Plaintiff never recieved any gatorade packets.

148. The RN's then assessed the bleeding gash on Plaintiff's face & mentions stitches. Defendant Tate orders G. Johnson & McMullen not to give Plaintiff stitches & just to use glue.

149. G. Johnson then applies glue on Plaintiff's face and leaves his cell along with everyone else.

150. Defendant(s) Tate, G. Johnson, & McMullen shut the Plaintiff's door without ensuring Plaintiff drank any water what so ever. see, (Southwell's Aff ¶9);(Heng's Aff, ¶4).

151. Defendant(s) Tate, McMullen, G. Johnson, & Agostinelli demonstrated malicious & sadistic conduct on 11/06/24 that will understandably help paint the overall picture depicting a complete disregard to Plaintiff's health, safety, & life,  with respects to all defendant(s) listed herein complaint as a whole.

152. On or around 11/07/24 when SRT Short, Guillory, Burnett, Tate, Kincaid, and Reistad would individually or collectively harass Plaintiff with his daily strip routine he would initally complain about his internal bleeding & severe pain which was only met with ridicule and threats. On one particular occasion SRT Guillory let Plaintiff know, "Don't give any problems or we will hold you down again like last time and it will be much worst.". see, (South-woll's Aff, ¶4).

153. Another occasion happened on or around 11/09/24 when Plaintiff expresses his severe pain & internal bleeding to defendant(s) Tate, Kincaid, Short, Guillory, & Reistad. Short said, "yeah well you shouldn't go after our own." Next Tate said, "That's what you get. Don't say shit ethier or your ass

FAC-22

can stay back here.". see, (Southwell's Aff, #5).

154. 11/12/24 Plaintiff let RHU staff know that he wanted to kill himself because of the traumatic sodomization that he had to go through that was being compounded by the severe harassment & threats he was living with on a daily basis. As a result the Plaintiff was placed in SMC-2 where it all had taken place.

155. 11/13/24 Plaintiff (being on suicide watch) has his multi-disciplinary team (MDT) meeting. Here he questions Dr. Cory Sonnemann about still waiting on his medications. Dr. Sonnemann assures Plaintiff that his : : : medications will be available soon. However, Plaintiff will not begin his medications Latuda & Zoloft until 12/16/24. see, (Ex. 110).

156. 11/13/24 through 11/19/24 Plaintiff was denied a shower for six (6) days.

157. 11/14/24 (noon) Plaintiff gets cleared from suicide watch & goes back to A-pod L8.

158. 11/14/24 (1800) Plaintiff goes back to SMC-2 for threatening to kill himself for the 2nd time. This night was extremely cold.

159. SMC-2 is directly across from the rec door that allows a direct path for a cold draft to blow into SMC-2. While on suicide watch inmates are not allowed any clothing. They are allowed a mattress, safety smock, safety smock sleeping bag (A sleeping bag smock is two smock blankets sewn together with a pillow sewn inside).

160. Again, Plaintiff is deprived of his cloths, and property. He is only given a Smock and Smock blanket. Plaintiff asks Sgt. Schmidt for an extra smock blanket. She said, "No, you can freeze to death.". see, (Ex. 106).

FAC-23

161. Defendant c/o Hamilton was designated with the duty of watching Plaintiff under 24/7 supervision to ensure that he did not hurt himself.

162. C/o Hamilton on his own accord left Plaintiff unattended & unsupervised between 2100 and 2300 hours.

163. Plaintiff called out for c/o Hamilton several times meeting no answer.

164. Plaintiff being cold, alone, and suicidal from just being sexually assaulted by the very same people threatening and harassing him daily--finds a staple, sharpens it and starts carving into his leg going for his artery for over two (2) hours making a three inch gash in his leg.

165. Around (2300) Hamilton comes back to SMC-2 and simply watches Plaintiff for a whole thirty (30) minutes carving into his leg fully knowing he was going for his artery.

166. Plaintiff asks Hamilton if he was going to do anything and he replys that he was ordered to do nothing.

167. Between 11/14/24 (2320) and 11/15/24 (0020) Defendant Lt. Christian Larkins arrives and stands outside SMC-2. He first asks Plaintiff if he wants to die. He continues with if that was the case he was not going to open the door until _after_ Hiesmer bled out but not before he also dumps an entire can of OC spray on him.

168. Defendant Larkins next implies how much he hates the Plaintiff & the influence he has. He tells Plaintiff that he has watched him via camera for two (2) hours plus carving into his artery.

169. Lt. Larkins next implies how much everyone hates him because of

FAC-24

his altercation with c/o Smith and that everyone wishes for Plaintiff to go away.

170. Plaintiff then requests medical attention however, defendant Larkins denies this and goes to leave. Plaintiff tries to bring to Larkins attention of how c/o Hamilton left him alone. Yet Lt. Larkins did not care. see, (Ex. 107-108).

171. After two (2) close calls with death Plaintiff realizes that this place wants him to die. The next day he tries to eat some food.

172. 11/16/24 (1700) Plaintiff attempts to eat despite the pain it causes but the pain of not eating is almost as bad.

173. 11/21/24 Plaintiff resubmits a med kite explaining cavity search symptoms after realizing his body was not healing or processing food. see, (Ex 125).

174. 11/25/24 through 12/1/24 Plaintiff was denied a shower for another six (6) days straight for filing a grievance on the sexual assault on 11/25/24. see, (Ex. 112).

175. 11/26/24 Plaintiff files his grievance appeal for the sexual assault with the grievance cordinators after the informal he filed got lost. see, (Ex. 100).

176. A few hours later defendant Cozby pulls Plaintiff out to discuss treatment. She vows to order a medical soft diet, gastro-intestional pills & pain pills, yet consequently does not.

177. 11/28/24 Plaintiff speaks with defendant Baltezar & Mental Health Tech (MHT) Kristen at his door about the sexual assault requesting PREA &

therapy for sexual trauma. However, both refuse to report it. see, (Ex. 126).

178. 11/28/24 Plaintiff's phone comes back on after ten (10) weeks so he calls PREA.

179. Between 08/30/24 and 11/28/24 Plaintiff was subjected to harsh solitary conditions having no power, lightswitch, mental health services, medical services, with no property or general pop privileges. Plaintiff was not able to communicate with loved ones since 09/18/24. see, grievance (Ex. 114).

180. 11/29/24 Plaintiff calls PREA again.

181. 11/29/24 Plaintiff sends med kite explaining his symptoms are worse & inquires about his soft diet. see, (Ex. 127).

182. 11/29/24 Plaintiff speaks with MHT Lindsey King at his door about being a victim to sexual assualt. She vowed to report it.

183. 11/30/24 Plaintiff calls PREA.

184. 11/30/24 Plaintiff starts refusing his trays due to the amount of pain eating would cause himself and the amount of blood would increase.

185. 12/01/24 Plaintiff calls PREA.

186. 12/01/24 Plaintiff sends med kite asking about soft diet & explains that he cannot eat. see, (Ex. 128).

187. 12/01/24 Therapist Myranda Hardy pulls Plaintiff out for a therapu-tic session to discuss sexual trauma. She let Plaintiff know she would report incident to PREA.

188. 12/01/24 Plaintiff sends med kite explaining symptoms to consist of severe pain & bleeding. He explains that he cannot eat. see, (Ex. 128).

189. 12/01/24 Plaintiff send med kite explaining symptoms & that he has missed seven (7) trays. see, (Ex. 128).

190. 12/02/24 Plaintiff sends med kite requesting a scope exam. see, (Ex. 129).

191. 12/03/24 After missing ten (10) trays Plaintiff is brought to the infirmary for chest pains. Where upon Medical Director Dr. Paul Rees now oversees Plaintiff's medical treatment care plan. Dr. Rees vows to order forty-five (45) day soft-diet, procto foam, (a canister that you squeeze up your rectum twice a day to stop bleeding) inflammatory pills, gastro-intestinal pills & pain meds. Yet Dr. Rees consequently does not.

192. 12/03/24 Plaintiff sends med kite asking for Dr. Rees to push the soft diet faster. see, (Ex. 130).

193. 12/04/24 Plaintiff sends a couple med kites explaining how painful it is to eat and asking about treatment. see, (Ex. 131-132).

194. 12/05/24 Plaintiff sends a med kite asking about diet and treatment. Plaintiff starts refusing trays again. see, (Ex. 133).

195. 12/06/24 Plaintiff starts soft diet.

196. 12/06/24 Plaintiff sends med kite explaining symptoms & internal bleeding. Asks about the procto foam. see, (Ex. 134).

197. 12/09/24 Dr. Rees pulls Plaintiff out for clinics & vows for the 2nd time to order the procto foam, medications, & extends the soft-diet for ninety (90) days,

198. 12/09/24 Plaintiff sends med kite explaining injury. see, (Ex. 135).

199. 12/11/24 Plaintiff speaks with Dr. Sonnemann about the sexual assault and how he cannot cope with the trauma. That he does not even know who he is anymore & wants to die. Dr. Sonnemann prescribes Plaintiff Latuda & Zoloft for his cronic depression and acute PTSD diagnosed by Myranda Hardy. see, (Ex. 122).

200. Plaintiff was taken off all his medications without due process on 06/09/24. Only five (5) days after his complaint was filed on 06/04/24.

201. 12/11/24 Plaintiff recieves his gastro-intestional meds.

202. 12/11/24 Plaintiff files a grievance on PREA Investigator Bill Weddington for conducting his investigation without once talking with Plaintiff. see grievance, (Ex. 103).

203. 12/11/24 (1300) SRT conducts a shakedown in A-pod. Plaintiff gets escorted to the Wallace building to be scanned in the bodyscanner.

204. Defendant(s) Burnett & Reisted escorted Plaintiff across the prison grounds to get scanned & on the way there Burnett tells Plaintiff that what happened to him was fucked up & how he has never been apart of anything like that in his life. Plaintiff tells Burnett that he plans on filing a suit & Burnett says he already knew that was coming.

205. After Plaintiff gets scanned and brought back to his cell in RHU he was speaking with defendant Short at his door when a SRT member came up to Plaintiff's door & started pulling his glove tight over his hand snapping it repeatedly around his wrist in a gesture that meant cavity search. This SRT member than gave Plaintiff a sinister look instilling a wave of fear, shame & embarassment over Plaintiff while Short smiles. see grievance, (Ex. 115).

206. 12/12/24 Larry Briggs with PREA pulls Plaintiff out to conduct 1st interview with Plaintiff to discuss the sexual assault.

207. Mr. Briggs tells Plaintiff that in his twenty some (20) years of doing investigations he has never done anything like this.

208. Plaintiff explains to Mr. Briggs how messed up he is both physically andpsychologically and how he needs medical & mental health services.

209. After  Plaintiff's discussion with Mr. Briggs, MHT Kristen & Katlyn have atherapy session with Plaintiff. He explains that he cannot even work out due to his injury. How he does not have any sex drive and has not even masterbated since before the assault. MHT Kristen & Katlyn tell Plaintiff that this is normal for rape victims & the 1st step to recover is to take back the power of masterbation. After Plaintiff hears this he quit feeling like a man.

210. 12/12/24 (1300) Defendant Baltezar takes picture of all the blood in Plaintiff's toilet & vowed to make a report.

211. 12/12/24 (1530) Plaintiff files an emergency grievance describing blood loss, feeling sick then recieves his procto foam at (1800). see.emergnecy grievance, (Ex. 161).

212. 12/12/24 (1900) Plaintiff goes to the infirmary and is seen by RN Danny whom documents blood in Plaintiff;s underwear. Plaintiff gets put on sick call list.

213. 12/15/24 Plaintiff has therapy session with Myranda to discuss sexual trauma.

214. 12/18/24 (1600) Plaintiff goes to infirmary for chest pains. RN Gordi checks heart & lats Plaintiff know that his medical soft diet got switched to a soft diet.

switched to pureed (a diet where everything is blended to pasta) due to his internal injury & its complications.

215. 12/19/24 Plaintiff starts his pureed diet due to not being able to process or digest food.

216. 12/19/24 Plaintiff sends an electronic med kite explaining his procto foam ran out & he is still having chest pains & internal bleeding.

217. 12/20/24 (1100) After the seventh (7) day prescription of procto foam ran out Plaintiff informed c/o Sean Cass that he is still bleeding & showed c/o Cass the amount of blood in his toilet.

218. 12/21/24 (1030) Plaintiff shows c/o Cass & Sgt. Strupe his toilet which was full of blood again. They reported it to medical.

219. 12/21/24 Plaintiff sends electronic med kite describing symptoms of fever, fatigue, & bloodloss.

220. 12/23/24 (1400) Sgt. Mcdoogle takes Plaintiff's bloody sheets & puts them in a red bio-hazard bag before giving him fresh sheets.

221. 12/23/24 (1620) RN Gabi takes Plaintiff's vitals & declares that he has a high heart rate & low blood pressure which she explains as Plaintiff's heart is working harder due to low fluids--A indication of internal bleeding.

222. 12/24/24 (1600) Plaintiff is taken to the infirmary & is informed he is scheduled for a colonoscopy & its catorgorized as "urgent" because Plaintiff is symptomatic.

223. 12/27/24 (1230) Plaintiff brings to Sgt. Strupe's attention that Plaintiff's eyes & fingers are turning yellow. Sgt. Strupe and other officers confirms this and Sgt. Strupe vows to call medical. see, (c/o Pitmon's declar,

¶6).

224. 12/27/24 (2245) Defendant Larkins & RN Danny pulls Plaintiff out for an assessment. RN Danny notes blood on sheets & underwear.

225. 12/31/24 (0930) Nurse on medical rounds tells Plaintiff he is urgent for outpatient treatment because he is highly symptomatic.

226. 01/03/25 (1230) Plaintiff lets c/o's Cass & Pitman know that he is having chest pains.

227. 01/03/25 (1350) RN Jennifer Skala brings Plaintiff a Gastro Intestional cocktail.

228. 01/06/25 Plaintiff requests ADA Accommodation for his mental illnesses.

229. 01/10/25 (1400) Plaintiff has therapy session with MHT Conie. Plaintiff speaks on being ashamed for speaking on what happened because of being ridiculed by staff & medical. Plaintiff says how he thinks its crazy that he is still suffering three (3) months later having to eat paste & gaining weight cause he cannot work out (exercise).

230. 01/17/25 Plaintiff's internal bleeding stops & he is able to slowly start exercising again.

231. After three (3) months of not being able to exercise & hardly move around Plaintiff is extremely weak, out of shape, and loss the majority of his muscle mass.

232. 01/28/25 (1030) SRT takes Plaintiff to the infirmary to start his colonoscopy prep. He stays up all night having cronic diarhea.

FAC-31

233. 01/29/25 (0830) Plaintiff is transferred to the Deer Lodge Hospital for his colonoscopy with defendant(s) Tate, Burnett, and Guillory.

234. 03/10/25 (1630) RN Gabi denies Plaintiff his meds & said he was discontinued. She claims that he threatened her and how he attempted to drop his own meds in order to abuse them. The bodycam that was worn by the present c/o at that time showed that it was RN Gabi that drop the meds and that Plaintiff threatened noone. see, (Ex. 162).

235. 03/10/25 (1845) Plaintiff goes to infirmary for chest pains where RN Rachael got in his face, yelled at him to shut up and told him to quit bitching & to get out. This was also recorded by c/o Kemmel's bodycam. see, (Ex. 163).

236. 03/12/25 After Plaintiff was found guilty for the two (2) write-ups that RN Gabi fabricated (these two write ups were later dismissed) he calls defendant Baltezar to the visiting room's window. Plaintiff wants to know if he is getting restarted but Baltezar refuses to tell him & walks away.

237. Plaintiff could hear defendant Baltezar calling for SRT & instantly without warning has a flashback to being roped on 10/29/24 which led to a window being broke and a code being called.

238. Plaintiff being taken off the very meds that was helping him cope with the trauma became induced in a panick feeling backed into a corner went into a flight or fight mode.

239. Plaintiff was so certain that he was going to be hurt again that he accused defendant Jovanovich on planning to dig in Plaintiff's ass again. Plaintiff expresses to Jovanovich how much he has suffered and the hell everyone has put him through.

240. Once Plaintiff was convinced that defendant(s) Tate, Burnett, Guillory, Jovanovich, & Baltezar (whom were all standing outside the window) were not going to hurt him again Plaintiff relaxed, complied, & laid down without incident.

241. 03/16/25 Plaintiff's pureed diet gets switched to the dental soft diet.

242. 03/28/25 (0915) Plaintiff has a therapy session with MHT Lindsey King. She lets him know that her, RN Ingrid, & defendant Jovanovich discussed how after review of all cameras on 3/10/25-3/12/25 with RN Rachael, RN Gabi, & defendant Baltezar on top of being wrongfully taken off his medications cold-turkey was not right. She said it was wrong how he was treated and how it played out, and that something was looking into being done., my meds came back

243. 04/16/25 Plaintiff goes back to regular diet trays after almost six (6) months of not being able to eat or process solid food.

244. 04/17/25 Plaintiff's ADA Accommodation is granted. ADA aid required to help Plaintiff process & understand information due to being mentally handicapped.

245. 04/25/25 Plaintiff has therapy session with MHT Camie to discuss the trauma from being sexually assaulted.

246. 05/08/25 Plaintiff has therapy session with MHT Camie. They discuss the face-to-face Plaintiff had with defendant Jovanovich on 04/30/25 during his MDT. Plaintiff describes the interaction as awkward and uncomfortable. He explains how he had alot of things he wanted to mention but could not focus long enough to get anything out other than explaining to Jovanovich that he was mentally handicapped. He just wanted the meeting to be over with & now

completely understands why noone is to conduct a manual rectal cavity
search if they work at the prison.

## VII. EXHAUSTION OF REMEDIES

247. The Plaintiff has exhausted his administrative remedies with
respects to all claims for all defendant(s) in accordance with PSB policy
3.3.3.

248. The Plaintiff filed a notice with the intent to sue concerning the
occurrences & state tort claims complained herein with the Risk Management
Tort Defense within ninety (90) days of those occurances, as required by
state law, and the Tort Defense has failed to settle the Plaintiff's claims
within the (120) days.

## VIII. CAUSE OF ACTION

### CLAIM 1
### EIGHTH AMENDMENT
### Excessive Force

249. On October 29th, 2004, defendant(s) Jovanovich, Baltezar, Cozby,
Reistad, Burnett, Tate, Kincaid, Short, & Guillory all played a integral part
in partaking in excessive force in violation of Plaintiff's Eighth Amendment
right against cruel & unusual punishment.

250. Defendant(s) Jovanovich & Baltezar violated Plaintiff's rights not
to be subjected to excessive force when they ordered defendant Cozby to
forcefully insert her fingers into Plaintiff multiple times to conduct an
unwarranted and unnecessary cavity search against Plaintiff's consent.

251. Reistad, Burnett, Tate, Kincaid, Guillory, & Short played an
integral part in excessive use of force by holding Plaintiff down while Cozby

FAC-34

sexually assaulted Plaintiff.

252. Plaintiff was held down on the unsanitary floor w/o struggle by six (6) men (Reistad, Burnett, Tate, Kincaid, Short, & Guillory) whom were screaming at him to "Stop Clinching! Stop Clinching!" while inflicting pain by applying weight to Plaintiff's pressure points to help facilitate Cozby in her role in this sexually assault.

253. The defendant(s) for claim 1 never once asked for consent. The Plaintiff was never offered a warning or chance to comply, for there was never even an order to comply to.

254. The defendant(s) for claim 1 did not act in good faith because they did not care about justice or restoring order. If so they would have followed MSP policies 3.1.17A: 3.1.17B: 3.1.17C: and MS G-04.0 which strickly forbids this highly restricted procedure by anyone inside the facility. These actions were done purely in retaliation & with malice. see, (officers Baily, Pittman, and Smith declar).

255. All staff present i.e., Jovanovich, Baltezar, Cozby, Short, Reistad, Guillory, Tate, Burnett, & Kincaid, have extensive training in security, physical force, medical policy & procedure, as the title to defendant(s) Reisatd, Burnett, Tate, Kincaid, Short, & Guillory all being members of SRT (Special Response Team) as well as defendant Baltezar holding the rank of Lt. of SRT for years prior to becoming the RHU unit manager. Their lack of restraint & disregard for the policy & procedure conveys their deliberate indifference to Plaintiff's safety & Constitutional rights. These defendant(s) of claim 1 were very much aware of alternative methods such as a dry cell or body scanner. These less drastice measures were readily available since Plaintiff found himself in one only a few hours later followed by a body scanner.

256. Countless times there was when Plaintiff repeatedly stressed his willingness to naturally pass this item. It was only after four (4) failed attempts of trying to retrieve this item was the Plaintiff even allowed to do so.

257. The purpose to use force was not applied to protect & restore but to punish & harm in retaliation for Plaintiff having a psychotic break. That Plaintiff was compliant & not going anywhere. There was no warrant or reason to believe he was harboring any contraband.

258. Futhermore, Cozby, Jovanovich, & Baltezar continue to demonstrate malice & illwill by ordering & executing a 2nd run inside Plaintiff's rectal cavity while Short, Tate, Quillory, Raistad, Burnett, & Kincaid had hands on Plaintiff serving no penological purpose when Plaintiff had already agreed to surrender his address book & corroborates this gesture with visual proof of feces sludging down his backside. see, (Ex. 117).

259. The force was excessive,,exaggerated, & unnecessary for Plaintiff posed zero threat. He was not resisting but was completely compliant. Plaintiff was fully naked in full restraints & blindfloded with a spitmask. Because Plaintiff posed no immediate threat the only purpose for the use of force was to hurt, punish, & degrade. see, (Officers Stith, Baily, Pitman declar).

## CLAIM 2
### FOURTH AMENDMENT
Unreasonable Search & Seizure

260. On October 29th, 2024, Cozby, Jovanovich, Baltezar, Short, Raistad, Quillory, Tate, Kincaid, & Burnett all played a integral part in partaking in a unreasonable search & seizure in violation of Plaintiff's Fourth Amendment right.

FAC-36

261. Jovanovich, Baltezar, & Cozby violated Plaintiff's right when Baltezar, & Jovanovich ordered Cozby to forcefully insert her fingers inside Plaintiff to conduct an unwarrented & unnecessary cavity search without consent, a warrant, or probable cause.

262. Short, Reistad, Burnett, Tate, Kincaid, & Guillory played an integral part in this unreasonable search & seizure by holding Plaintiff down while Cozby sexually assaulted Plaintiff.

263. The defendant(s) of Claim 2 had no right or reasonable cause to desecrate Plaintiff's personal body integrity & sense of dignity. Plaintiff had neither property or clothing left to search & had already surrendered his weapon. Their was nothing sticking out of Plaintiff & no way for the defendant(s) of Claim 2 to have known about his address book. see, (FAC. ¶58-60):(Rainbow's 2nd declar. ¶2).

264. Having the availability of alternative methods i.e., drycell, & body scanner the search was unreasonable. The search was excessive being conducted by a female without legal authority. The search was not conducted in the infirmary or on a exam bed which there just so happen to be one in the next room; but was done on the floor in a suicide cell in biohazard like conditions being unsanitary as unsanitary can be.

265. For the Plaintiff to undergo four (4) manual body cavity searches all within a couple hours without 1st being allotted less drastic measures, nor the chance to pass on it on his own was more than exaggerated. Only to find himself in a drycell serves no penological purpose other than to degrade harm, harass, punish, & humilate.

266. The fact that the Plaintiff herein action was the 1st to have this happen in regards to the cavity searches is a testimony to the customs and

the standard of procedure and HSD policies i.e., 3.1.17A; 3.1.17B; 3.1.
17C; and HS G-04.0 that strickly forbids this highly restrictive procedure.
see, (Officers Baily, Smith, Pitman declar.). The search was perversive &
sexual assault by definition under 18 U.S.C. § 2246. Sexual assault serves no
penological need.

267. Plaintiff had no opportunity or chance to prepare & defend against
the offensive contact having no warning or order to comply to. This being
compounded by the brutality of Tate, Short, Reistad, Burnett, Kincaid, &
Guillory screaming at Plaintiff to stop clinching while applying a magnitude
of weight on pressure points did nothing to allay the emotional & physical
trauma.

268. To determine the level of medical training the defendant(s) of
Claim 2 to perform such a surgical procedure one must only ask a doctor if
they would risk such an abrupt invasion without taking the prelimary steps to
ensure that it was 1st safe to do so.

269. It only took twenty-four (24) hours for Plaintiff to naturally pass
this item due to the amount of damage & trauma that was delivered by both
Cozby's & Dr. Johnson's vicious & aggresive failed attempts that was
unnatrual, unnecessary, & rape.

270. Jovanovich & Baltezar violated Plaintiff's rights to be free from
unreasonable search & seizure when they ordered Cozby to shove her fingers
inside Plaintiff's rectum multiple times with the assistance of Short, Kincaid
Guillory, Burnett, Reistad, & Tate holding him down constitutes a gross i.
invasion of the Plaintiff's privacy rights.

CLAIM 3
EIGHTH AMENDMENT
Sexual Assault

271. On October 29th, 2024, Cozby, Jovanovich, Baltezar, Short, Guillory, Tate, Burnett, Kincaid, & Reistad all played an integral part in partaking in sexual assault in violation of Plaintiff's Eighth Amendment right to be free from cruel & unusual punishment.

272. Cozby, Jovanovich, & Baltezar violated Plaintiff's rights when Jovanovich, & Baltezar ordered Cozby to shove her finfers inside Plaintiff's rectal cavity multiple times being a private & intimate part of his body.

273. Reistad, Short, Guillory, Tate, Burnett, & Kincaid played a integral part in sexually assaulting the Plaintiff by holding him down while Cozby sexually assaulted the Plaintiff.

274. The force was excessive & unnecessary for Plaintiff posed zero threat. He was not resisting but was completely compliant. Plaintiff was fully naked in full restraints & blindfolded with a spitmask.

275. Plaintiff was held down on the unsanitary floor without struggle by six (6) men i.e., Reistad, Burnett, Short, Guillory, Tate, & Kincaid whom were screaming at him to stop clinching while inflicting pain by applying weight to Plaintiff's pressure points to help facilitate Cozby in her role in this sexual assault.

276. The defendant(s) for Claim 3 never asked for consent. Plaintiff was never offered a warning or chance to comply. For there was never an order to comply to. Countless times there was when Plaintiff repeatedly stressed his willingness & eagerness to naturally pass this item. It was only after four (4) failed attempts of trying to retrieve this item was Plaintiff even allowed to do so.

277. The defendant(s) for Claim 3 did not act in good faith because they

because they did not care about justice or restoring order. If so they would have attained a warrant which would have been evident to Plaintiff that the search was justified and not a abusive show of force. It was not to restore order, if so they would have followed HSP 3.1.17A; 3.1.17B; 3.1.17C; and HS G-04.0. There are no exceptions to these policies. The search was perversive & sexual assault by defenition under 18 U.S.C. § 2246 & 45-5-501, MCA. Sexual Assault serves no penological purpose. see, (FAC, ¶255).

278. The defendant(s) for Claim 3 were very much aware of alternative methods, e.g., dry-cell, & bodyscanner, or an option to comply. These less drastic measures were readily available since Plaintiff found himself inside both after he recieved four (4) cavity searches.

279. The purpose to use force was not applied to protect & restore order but to punish and harm in retaliation for an altercation between Plaintiff & c/o Smith. Plaintiff was compliant & not going anywhere. There was no warrant or probable cause.

280. Furthermore Cozby, Jovanovich, & Baltezar continue to demonstrate malice & illwill by ordering & executing a 2nd run inside Plaintiff's anus while Short, Guillory, Tate, Burnett, Kincaid, & Reistad had hands on Plaintif serving no penological purpose when Plaintiff had already agreed to surrender his address book & corroborates this gesture with visual proof of feces sludging down his backside.

### CLAIM 4
### EIGHTH AMENDMENT
### Failure to Protect

281. On October 29th, 2024, Jovanovich, Baltezar, Reistad, Burnett, Tate, Kincaid, Short, & Guillory all played a integral part on failing to protect Plaintiff in violation of his Eighth Amendment right against cruel & unusual

punishment.

282. The defendant(s) listed under Claim 4 failed to protect Plaintiff when not only did they know of Plaintiff's risk of assault & failed to stop it but was the leading force behind it.

283. Defendant(s) of Claim 4 had every opportunity to stop Cozby's harmful act but choose to disregard the excessive risk to Plaintiff's health & safety in the sexual assault themselves.

284. For this Plaintiff to endure four (4) manual body cavity searches all within a couple hours without 1st being allotted less drastic measures that would have allayed the risk to Plaintiff's safety & health yet choose to violently cause unnecessary trauma & pain serves no purpose other than to harm punish, & degrade.

285. Defendant(s) of Claim 4 did not act in good faith since never has this happened before in the last twenty (20) some years. This can be a tribute to the very policies that forbid this highly restrictive procedure. i.e., 3.1.17A; 3.1.17B; 3.1.17C; HS G-04.0. This was a retalitory response to Plaintiff's psychotic break. see, (FAC, ¶255).

286. Jovanovich & Baltezar violated Plaintiff's right to be free from cruel & unusual punishment under the Eighth Amendment when Jovanoich & Baltezar ordered Cozby to sexually assault Plaintiff multiple times & failed to stop or cancel this order.

287. Reistad, Burnett, Tate, Kincaid, Short, & Guillory violated ? · · · Plaintiff's right to be free from cruel & unusual punishment under the Eighth Amendment when they failed to protect Plaintiff's health & safety when Cozby shoved her fingers inside Plaintiff's rectum multiple times. They instead

choose to disregard Plaintiff's risk by assisting Cozby's conduct by holding Plaintiff down thus contributing to his injuries.

## CLAIM 5
### STATE TORT
Sexual Assault & Battery

288. On October 29th, 2024, Cozby, Jovanovich, Baltezar, Reistad, Burnett Tate, Kincaid, Short, & Guillory violated Plaintiff's rights secured by the Mont. Const., Art. II § 4 (Individual Dignity); § 10 (Right of Privacy); § 4 (Searches & SEizures); § 22 (Excessive Sanctions) for sexual assault & Battery against Plaintiff in accordance with 45-5-502, MCA. & 45-5-501, MCA.

289. Cozby purposely committed sexual battery when she shoved her fingers inside Plaintiff's rectal cavity multiple times.

290. Reistad, Burnett, Tate, Kincaid, Short, & Guillory all purposely played an integral part in partaking in sexual battery against Plaintiff by holding him down when Cozby continues to sodomize him.

291. Reistad, Burnett, Tate, Kincaid, Short, Guillory, & Cozby intended to knowingly perform & assist in the manual cavity search intentionally touching Plaintiff over his objection & without his consent & that in doing so willfully disregarding Plaintiff's rights.

292. Cozbys assistance from Reistad, Burnett, Tate, Kincaid, Short, & Guillory was both offensive, harmful, & sexual when Cozby entered Plaintiff's anus--being both a private and intimate part of his body violently robbing Plaintiff's sense of personal dignity & body integrity.

293. The actions of the above named defendent(s) listed for Claim 5 were at the behest of Jovanovich & Baltezar whom both purposely & knowingly ordered the sexual battery & assault making Jovanovich & Baltezar just as liable

and culpable.

## CLAIM 6
### STATE TORT
### Assault & Battery

294. On October 29th, 2024, Cozby, Jovanovich, Baltezar, Reistad, Burnett Tate, Kincaid, Short, & Guillory violated Plaintiff's rights secured by the Mont. Const., Art. II §§ 4; 10; 11; and 22, for assault & battery against Plaintiff in accordance with 45-5-202, MCA.

295. Cozby purposely committed assault & battery when she shoved her 2 fingers inside Plaintiff's anus multiple times.

296. Reistad, Burnett, Tate, Kincaid, Short, & Guillory all purposely played an integral part in partaking in assault & battery against Plaintiff by holding him down when Cozby continued to sodomize him.

297. Cozby, Reistad, Burnett, Tate, Kincaid, Short, & Guillory knowingly performed & assisted in the manual cavity searches intentionally touching Plaintiff over his objection & without his consent & that in doing so willfully disregarded Plaintiff's rights.

298. Cozbys contact with the assistance of Reistad, Burnett, Tate, Kincaid Kincaid, Short, & Guillory was both offensive & harmful when Cozby entered Plaintiff's rectum violently stealing Plaintiff's sense of personal dignity & body integrity.

299. The actions of the above named defendant(s) lidted for Claim 6 were at the behest of defendant(s) Jovanovich & Baltezar whom both purposely & knowingly ordered the battery on Plaintiff.

300. These directives are beyond any logical reason, security measure, or

penological need. These directives were given with malice & degreation. see, (Officers Smith, Baily, Pitman declar). This solidly implicates & speaks to their direct involvement in the above detailed assault & battery making Jovanovich & Baltezar just as liable & culpable.

## CLAIM 7
### STATE TORT
### Intentional Infliction of Emotional Distress

301. On October 29th, 2024, Cozby, Jovanovich, Baltezar, Short, Reistad, Burnett, Tate, Kincaid, & Guillory violated Plaintiff's rights secured by the Mont. Const., Art. II §§ 4; 10; 11; and 22 in accordance with 45-5-202, MCA., 45-5-501, MCA., and 45-5-502, MCA. constituting the Tort for Intentional infliction of emotional distress pursuant Restatement (Second) of Torts, § 46.

302. Jovanovich, Baltezar, & Cozby violated Plaintiff's rights when Jovanovich, & Baltezar ordered the action of Cozby to execute shoving her fingers inside Plaintiff's anus sexually assaulting him multiple times without warning or consent is beyond outrageous and beyond the civilized bounds of decency.

303. Reistad, Burnett, Tate, Kincaid, Short, & Guillory played an integral part in violating Plaintiff's rights by holding him down, screaming at him to stop clinching in order to assist Cozby in sodomizing the Plaintiff.

304. The listed defendant(s) for Claim 7 brought a totality of extreme action with regards to penetrating Plaintiff's rectal cavity which is the direct result for Plaintiff's physical injury & severe emotional distress.

305. These defendant(s) listed for Claim 7, by ordering, assisting, & executing such contact that Plaintiff can only describe as rape was brutal & reckless causing serious bodily harm, shock, grief, shame, humiliation, &

embarassment.

306. Plaintiff still endures the foregoing emotions above having to this day continues therapy and medications to help cope & deal with his trauma he went through on 10/29/24.

CLAIM 8<br>EIGHTH AMENDMENT<br>Excessive Force

307. On October 29th, 2024, Salmonsen, Dr. Johnson, & Short all played an integral part in participating in excessive force in violation of Plaintiff's Eighth Amendment right to be free from cruel & unusual punishment.

308. Salmonsen, Short, & Johnson violated Plaintiff's rights when Salmonsen & Short ordered the execution of Dr. Johnson to insert his fingers & an intrusive object inside Plaintiff's rectal cavity to conduct an unwarranted exaggerated, & unnecessary searches against Plaintiff's consent.

309. Plaintiff immediately refused medical & the X-Ray that Dr. Johnson took. Plaintiff explained the item & again pleaded his willingness to pass item naturally. see, (Ex. 118-119). "He thinks he can move his bowels & remove the foreign body."

310. Salmonsen, Short, & Dr. Johnson did not act in good faith. They did not care about justice or restoring order--otherwise they would have attained a search warrant that would have allayed Plaintiff's fears by making the searches justified by a judge & not a display of abusive force designed to punish. They would have attempted to 1st try alternative methods i.e., dry-cell, bodyscanner, or more time to pass the item naturally. He was inside a hospital that would have undoubtedly had a supply of laxatives. This would have been in accordance with MSP custom & MSP policies 3.1.17A; 3.1.17B;

3.1.17C & HS G-04.0. For the Plaintiff to undergo four (4) manual body cavity searches all within a couple hours without 1st being allotted less drastic measures—only to find himself in a dry-cell afterwards serves no penological purpose other than to degrade, harm, harass, punish, & humililate.

311. The purpose of force was not applied to protect or restore order but to punish & harm. A retalitory response for a psychotic break. What sense does it make to continue to stick your hands inside a man's anus over & over again when he is begging everyone to just let him pass it naturally. It only took twenty-four (24) hours for Plaintiff to pass this item due to the amout of damage & trauma that was delivered by both Dr. Johnsons & Cozbys vicious & aggresive failed attempts that was unnatural, unnecessary, exaggerated, & rape.

312. The actions of V. Johnson were at the behest of Salmonsen & Short. Salmonsen is just as liable & culpable since before the Plaintiff departed for the hospital Salmonsen made it a point to declare just inside the main gate, "You know how hard it was to convince the hospital to do this?" Then turns to Plaintiff saying, " Look at me you piece of shit. Your ass is mine now."

313. Plaintiff later attains medical documents, see, (Ex. 118), that the hospital recieved from MSP that went into depth on how hard it was & what Salmonsen had to say to convince them. This document describes a fabricated account that depicts Plaintiff having a weapon wrestled away from him; then manages to get the handle portion of the weapon back; then somehow in the midst of all this pulls down his shorts & shoves this piece inside his rectum, all the while, in handcuffs like some Harry Houdini.

314. Short has demonstrated his malice by making gestures with his glove indicating harm & harassment. see, (FAC, ¶104). V. Johnson shows malice when

he threatened Plaintiff that if he did not comply Missoula would be much worse. see, (Id ¶111).

315. The force defendant(s) Salmonsen, Short, & V. Johnson partook in was excessive, unnecessary, & exaggerated for the Plaintiff posed zero threat in full restraints with nothing more than a sheet to cover himself & the feces that was still stuck to his backside. Countless times there was when Plaintiff repeatedly stressed his willingness & eagerness to naturally pass the item. It was only after four (4) failed attempts of trying to retrieve this was Plaintiff even allowed to do so.

### CLAIM 9
### FOURTH AMENDMENT
### Unreasonable Search & Seizure

316. On October 29th, 2024, Salmonsen, Short, & V. Johnson all played an integral part in participating in a unreasonable search & seizure in violation of Plaintiff's Fourth Amendment.

317. Salmonsen, Short, & V. Johnson violated Plaintiff's rights when Salmonsen & Short ordered the execution of V. Johnson shoving his fingers & an intrusive object inside Plaintiff's rectal cavity, to conduct an unwarranted & an exaggerated unnecessary rectal search without Plaintiff's consent being both offensive & perversive.

318. It was unreasonable for V. Johnson, Salmonsen, & Short to not have considered the amount of physical & emotional trauma the Plaintiff would endure. They refused to allow the Plaintiff to pass the item naturally despite his many pleas. It was only after four (4) failed attempts of trying to retrieve this item was Plaintiff even allowed to do so.

319. Even after V. Johnson gave Plaintiff his 3rd Cavity search declaring

that, "There's nothing there." V. Johnson insisted on going back inside Plaintiff with a speculum causing even further extreme severe pain, physical & emotional trauma.

320. For the Plaintiff to undergo four (4) manual body cavity searches all within a couple hours without 1st being allotted less drastic measures : only to find himself in a dry-cell serves no penological purpose other then to degrade, harm, harass, punish, & humilate.

321. The actions of V. Johnson were at the behest of Salmonsen & Short. Salmonsen is just as culpable & liable since before the departure he made it a point to make some statements. see, (Id ¶312).

322. Plaintiff later attains medical documents that the hospital recieved from MSP that went into depth on how hard it was & what Salmonsen had to say to say to convince them. see, (Id. ¶312; Ex. 118). Salmonsen & Short both knew that Plaintiff did not want to go to the hospital, had already tried to pass the item after he was given an option to do so, and most certainly did not stick a portion of a weapon inside himself.

323. Salmonsen, Short, & V. Johnson violated Plaintiff's rights to be free from unreasonable search & seizure when Salmonsen & Short ordered V. Johnson to shove his fingers & an object inside Plaintiff's rectum causing further trauma & pain. see, (Ex. 117 & 119). This procedure had to be stopped due to the mass amount of trauma Plaintiff went through. This procedure was only conducted based off of false & fabricated events reported to the hospital with the sole purpose to harm & punish being prima facie sadistic & malicious constituting a gross invasion of the Plaintiff's dignity & privacy rights.

CLAIM 10
EIGHTH AMENDMENT
Sexual Assault

324. On October 29th, 2024, Salmonsen, Short, & V. Johnson all played an integral part in participating in sexual assault in violation of Plaintiff's Eighth Amendment right against cruel & unusual punishment.

325. Salmonsen, Short, & V. Johnson violated Plaintiff's rights when Salmonsen & Short ordered the execution of V. Johnson to insert his fingers and an intrusive object inside Plaintiff's rectal cavity.

326. Plaintiff immediately refused medical. Plaintiff however explained the item & again pleaded his willingness to pass this item naturally. see, (Ex. 118-119).

327. Salmonsen, Short, & V. Johnson did not act in good faith. They did not care about justice or restoring order otherwise they would have attained a search warrant that would have shown it was justified & not rape. They would have attempted to 1st try alternative methods i.e., dry-cell, bodyscanner, or the option to proceed with naturally passing the item. in accordance with MSP custom & MSB policies 3.1.17A; 3.1.17B; 3.1.17C; & MS G-04.0. Salmonsen & Short would have fed & showered the feces off of himself before putting him in the dry-cell for the night. They would have given him water. For the Plaintiff to undergo four (4) manual body cavity searches all within a couple hours without 1st being alloted less drastic measures, only to find himself in a dry-cell afterwards, serves no penological purpose other than to degrade, harm harass, punish, & humililate.

328. The unnecessary & excessive force was assaultive in the sexual nature by definition per 18 U.S.C. § 2246, & 45-5-501, MCA. Sexual assault serves no penological purpose.

329. The purpose of force was not applied to protect or restore order but to punish & harm. Why was the Plaintiff not offered medical treatment until a

month later. V. Johnson made it a point to give specific instructions to return Plaintiff if complications manifested. This was a retalitory response due to Plaintiff having a psychotic break. There is no logic behind the continuous invasion into a man's anus whom has vowed repeatedly to surrender this item naturally. It only took twenty-four (24) hours for Plaintiff to pass this item due to the amount of trauma & damage that was delivered by both Cozby & V. Johnsons vicious & aggresive failed attempts that was unnatural, unnecessary, exaggerated, & rape.

330. The actions of V. Johnson were at the behest of Salmonsen & Short. Salmonsen is just as liable & culpable since before the Plaintiff departed for the hospital Salmonsen made it a point to speak his mind. see, (Id. ¶312).

331. Plaintiff later attains medical documents that the hospital recieved from MSP that went into depth of how hard it was & what Salmonsen had to say to convince them. see, (Ex. 118). This document depicts a falsified event that describes Plaintiff having a weapon-wrestled away from him, then manages to get the handle portion back, then manages to somehow in the midst of all the commotion pulls down his shorts and shoves this piece inside his rectum, all the while in handcuffs.

332. Short has demonstrated his malice by making gestures with his glove indicating harm, as well as not correcting the false statement by Salmonsen which subjected Plaintiff to his injury. Dr. V. Johnson shows his malice when he threatened Plaintiff with what would happen if he did not comply. Salmonsen shows his malice by the statements he made  inside the main gate; by denying Plaintiff food, water, and the chance to shower the feces off himself, and denying him medical for a month.

333. The force Salmonsen, Short, & V. Johnson partook in was excessive,

exeggerated, unnecessary, & rape for Plaintiff posed zero threat in full restraints with nothing more than a sheet to cover himself. Countless times there was when Plaintiff repeatedly stressed his willingness & eagerness to naturally pass his address book. It was only after the fourth failed:attempt plus the 1st initial unsuccessful breach of trying to retrieve this was Plaintiff even allowed to do so. Plaintiff is no expert of rape but by his own account the touch & contact felt sexual.

CLAIM 11
EIGHTH AMENDMENT
Failure to Protect

334. On October 29th, 2024, Salmonsen, Short, Raistad, Burnett, & Kincaid all played an integral port on failing to protect Plaintiff in violation of his Eighth Amendment right against cruel & unusual punishment.

335. Salmonsen & Short, failed to protect the Plaintiff when not only did they know of Plaintiff's risk of sexual assault & failed to stop it but was the driving force behind it.

336. Raistad, Burnett, & Kincaid being in the same room during the assault had every opportunity to stop or intervene V. Johnson's harmful act but choose to disregard the excessive risk to Plaintiff's health & safety by partaking in the sexual assault themselves.

337. Salmonsen, Short, Burnett, Kincaid, & Raistad all knew of alterna-tive measures that would have allayed the risk to Plaintiff's health & safety but instead choose to force Plaintiff to endure four (4) manual body cavity searches all within a couple hours without 1st being alloted these less drastic measures.

338. Salmonsen, Short, Kincaid, Burnett, & Raistad did not act in good

faith since never has this happened before in the last twenty (20) some years. see, (Officers Baily, Smith, Pitman declar). This can be contributed to the very policies that forbid this highly restrictive procedure. i.e., 3.1.17A 3.1.17B; 3.1.17C; HS G-04.0. This was a retaliatory response to the Plaintiff having a psychotic breakdown.

339. Salmonsen is just as liable & culpable since before the Plaintiff departed to the hospital he made it a point to make some comments. see, (FAC, ¶312).

340. Plaintiff later attains medical documents that the hospital recieved from HSP that went into depth on how hard it was being that Salmonsen was to use his imagination to fabricate a event that never happened. see, (Ex. 118).

341. Salmonsen & Short violated Plaintiff's rights to be free from cruel & unusual punishment when they ordered V. Johnson to sexually assault the Plaintiff multiple times & failed to stop or cancel this order.

342. Burnett, Kincaid, & Roistad violated Plaintiff's rights to be free from cruel & unusual punishment when they failed to protect Plaintiff's health & safety when V. Johnson sexually assaulted Plaintiff multiple times. They had every opportunity to stop or intervene but instead choose to disregard Plaintiff's rights, health, & safety.

### CLAIM 12
### STATE TORT
### Sexual Battery & Assault

343. On October 29th, 2024, Salmonsen, Short, & V. Johnson violated Plaintiff's rights secured by the Mont. Const., Art. II §§ 4; 10; 11; and 12, for sexual assault & battery against Plaintiff in accordance with 45-5-502, MCA, & 45-5-501, MCA.

344. Defendant(s) Salmonsen, Short, & V. Johnson purposely committed sexual assault & battery when Salmonsen & Short ordered the execution of V. Johnson shoving his fingers & an intrusive object inside Plaintiff's rectum.

345. Salmonsen, Short, & V. Johnson intended to knowingly perform & order the manual body cavity searches, intentionally touching Plaintiff over his objection & without his consent; and that in doing so they willfully disregarded Plaintiff's rights.

346. V. Johnson's contact was both offensive & harmful when he entered Plaintiff's anus--being both a private & intimate part of his body violently robbing Plaintiff's sense of personal dignity & body integrity.

347. The sexial actions of V. Johnson was at the behest of Salmonsen & Short whom both purposely & knowingly ordered the sexual assault & battery on the Plaintiff.

348. Salmonsen is just as liable & culpable since before the Plaintiff departed for the hospital he made some comments and made a false report in order to convince the hospital to perform an unlawful act. see, (FAC ¶312; Ex. 118).

349. Plaintiff later attains medical documents that the hospital recieved from MSP that went into depth on how hard it was for Salmonsen to convince them. see, (Ex. 118). This document is fraud and fabricated.

350. These directives are beyond any logical reason, security measure, or penological need. These directives were given with malice & degreation. This solidly implicates & speaks to Salmonsen & Shorts direct involvement.

CLAIM 13
STATE TORT
Assault & Battery

351. On October 29th, 2024, Salmonsen, Short, & V. Johnson violated Plaintiff's rights secured by the Mont. Const., Art. II §§ 4; 10; 11; and 22, for assault & battery against the Plaintiff in accordance with 45-5-202, MCA.

352. V. Johnson purposely committed assault & battery when he shoved his fingers & an intrusive object inside Plaintiff's rectal cavity multiple times.

353. Defendant(s) V. Johnson, Short, & Salmonsen knowingly authorized & performed the manual rectal cavity search intentionally touching Plaintiff :·: over his objection & without his consent--and that in doing so willfully disregarded Plaintiff's rights.

354. V. Johnson's contact which was authorized by Salmonsen & Short was offensive, harmful, & sexual when V. Johnson entered Plaintiff's anus violently stealing Plaintiff's sense of personal dignity & body integrity.

355. The actions of V. Johnson were at the behest of Salmonsen & Short whom both purposely & knowingly ordered the assault on Plaintiff.

356. Salmonsen is just as liable & culpable. see, (FAC ¶312; Ex. 118).

357. These directives are beyond any logical reason, security measure, or penological need. These directives were given with malice & degreation. This solidly implicates & speaks to Salmonsens & Shorts direct involvement.

CLAIM 14
STATE TORT
Intentional Infliction of Emotional Distress

358. On October 29th, 2024, defendant(s) V. Johnson, Salmonsen & Short violated Plaintiff's rights secured by the Mont. Const., Art. II §§ 4; 10; 11;

and 22, in accordance with 45-5-202, MCA, 45-5-501, MCA, and 45-5-502, MCA, constituting the Tort for intentional infliction of emotional distress pursuant to Restatement (Second) of Torts, § 46.

359. Short, Salmonsen, & V. Johnson violated Plaintiff's rights when Salmonsen & Short ordered V. Johnson to shove his fingers & an intrusive object inside Plaintiff's rectal cavity sexually assaulting him without 1st attempting less drastic measures is beyond outrageous & beyond the civilized bounds of decency.

360. Short, Salmonsen, & V. Johnson brought a totality of extreme action of brutally penetrating Plaintiff's rectal cavity which is the direct result for Plaintiff's injury & severe emotional distress. see, (Ex. 119-120).

361. Short, Salmonsen, & V. Johnson by ordering & executing such contact that Plaintiff can only describe as sexual & rape, was brutal, exaggerated, & reckless causing him serious bodily injury, harm, shock, horror, grief, shame, humiliation, embarassment, & fear.

362. Short is just as liable & culpable being the lead supervisor at the Deer Lodge Hospital during the assault.

363. Salmonsen is just as liable & culpable for authorizing and fabricating events. see, (FAC ¶312; Ex. 118).

364. Plaintiff still endures the foregoing emotions above having to this day continue medications & therapy to help cope & deal with his trauma he went through on 10/29/24.

## CLAIM 15
### EIGHTH AMENDMENT
#### Deliberate Indifference

365. On October 29th, 2024, Salmonsen violated the Eighth Amendment for being deliberately indifferent to Plaintiff's right to free from cruel & unusual punishment.

366. Defendant Salmonsen was deliberately indifferent to Plaintiff's health, medical, & safety when he falsely reported to the hospital how Plaintiff inserted part of a knife inside his rectum subjecting him to further harm & injury. see, (FAC ¶312; Ex. 118).

367. Salmonsen had knowledge that Plaintiff did not insert any part of a knife inside himself; that the Plaintiff surrendered the weapon without further incident; that the Plaintiff did not want to go to the hospital; and that the Plaintiff had already agreed to past the object naturally. Salmonsen knew of the further trauma & risk he was subjecting the Plaintiff to and chose to disregard this excessive risk to Plaintiff's health & safety by doing nothing about it.

368. Salmonsen knew of alternative measures that would have allayed the risk to Plaintiff's health & safety however, he chose to instead direct & force the Plaintiff to undergo an additional two (2) recyal searches without 1st allowing less drastic measures to be taken.

369. Defendant Salmonsen did not act in good faith since Plaintiff had repeatedly stressed his willingingness & eagerness to naturally pass this item and per Salmonsen's own policy 3.1.17A(G) (that he signed after DOC wrote) the warden is only to authorize this highly forbidden & restrictive procedure when a full body scan is unable to be conducted & the inmate has consented to the procedure in writing; If no consent is given then DOC legal must get involved. Plaintiff never gave any type of consent, let alone in writing. It was only after the Plaintiff's fourth cavity search was he even allowed the options of

a bodyscan & dry-cell.

370. Salmonsen's acts & omissions were laced with malice & sadistic illwill because the Plaintiff was not; (1) given any dinner or food until morning; (2) given any water until morning; (3) given a shower to wash the feces off himself; and (4) did not recieve medical attention for a month.

371. Salmonsen's actions & omissions caused further & unnecessary injury & trauma with respects to Plaintiff's physical & mental health. This is apparent with V. Johnson's report of having to stop his procedure when bloody mucosa was noted. see, (Ex. 119).

CLAIM 16
FOURTH AMENDMENT
Excessive Searches

372. On November 1st, 2024, defendant(s) Jovanovich, Baltezar, Short, Tate, Reistad, Guillory, Kincaid, & Burnett all played a integral part in thirty (30) days of excessive strip searches in violation of Plaintiff's Fourth Amendment.

373. For thirty (30) days Short, Guillory, Tate, Burnett, Reistad, & Kincaid would harass the Plaintiff by stripping him out, making him squat & cough & toss his cell. During these degrading searches the defendant(s) Short, Guillory, Tate, Burnett, Reistad, & Kincaid would further degrade & humiliate the Plaintiff with threats of Plaintiff staying in solitary if he said anything. see, (Southwell's Affidavit ¶4-5);(Heng's Affidavit ¶5).

374. There were many times when the Plaintiff would not even go anywhere and between searches had no opportunity to aquire contraband being that he would remain in his cell for days on end apart from being stripped out daily. These searches were soley conducted to further harass, punish, degrade the

Plaintiff & to ensure that he kept his mouth shut about the cavity searches.

375. The actions of Short, Guillory, Tate, Burnett, Reistad, & Kincaid were at the behest of Baltezar & Jovanovich whomed ordered the (30) days of strip searches making them just as liable & culpable.

376. Defendant(s) Jovanovich, Baltezar, Short, Guillory, Tate, Burnett, Reistad, & Kincaid violated Plaintiff's right to be free from unreasonable search & seizure when both Jovanovich & Baltezar ordered Short, Guillory, Tate Burnett, Reistad, & Kincaid to conduct unwarranted & unprovoked cell & visual cavity searches making Plaintiff expose his anus to the very same personnel who sexually assaulted him for (30) days in order to further punish, degrade, harass, & humiliate constituting a gross invasion of the Plaintiff's privacy rights.

CLAIM 17
EIGHTH AMENDMENT
Failure to Protect

377. On November 14th, 2024, defendant(s) Larkins & Hamilton failed to protect Plaintiff in violation of his Eighth Amendment right to be free from cruel & unusual punishment.

378. Hamilton failed to protect the Plaintiff when he walked away from his assigned post of watching a suicidal inmate for two (2) hours fully knowing the high risk of the Plaintiff inflicting self harm. Upon his return Hamilton watched the Plaintiff carve into his artery for another thirty (30) minutes yet failed to act.

379. Larkins failed to protect Plaintiff when he watched a self-mutilation session for two (2) hours conducted by the Plaintiff & choose not t.

to act, as well as, ordered Hamilton & others to stay away & do nothing.

380. Defendant(s) Larkins & Hamilton had every opportunity to stop :
Plaintiffs harmful acts. Both Hamilton & Larkins knew the Plaintiff was; (1)
a high risk for suicide; (2) knew the Plaintiff was going for his artery; and
(3) knew that Plaintiff would bled out in under three (3) minutes. However, .:.
they choose to disregard Plaintiff's health, safety, & life by staying away &
doing nothing.

381. Larkins & Hamilton did not act in good faith; if so they would have
immediately stopped Plaintiff from hurting himself by any means necessary,
i.e., taser, OC, peperball. Instead, they left the Plaintiff alone and allowed
him to mutilate his leg for over two (2) hours. This was driven by their hate
for Plaintiff which was evident in what Larkins told Miesmer & by denying him
medical attention. see, (FAC ¶¶166-170).

382. Defendant(s) Larkins & Hamilton violated Plaintiff's right to be :.:
free from cruel & unusual punishment under the Eighth Amendment when they
failed to protect Plaintiff's health & safety by allowing Miesmer to carve out
his artery for over two (2) hours knowing the excessive risk to his life yet
maliciously did nothing & intentionally stayed away.

CLAIM 18
EIGHTH AMENDMENT
Deliberate Indifference to Medical

383. On November 6th, 2024, defendant(s) Agostinelli, G. Johnson, &
McMullen failed to protect Plaintiff in violation of his Eighth Amendment
right to be free from cruel & unusual punishment.

384. Agostinelli was deliberately indifferent when Plaintiff informed
her that he was dizzy, having chest pains & has not had anything to eat or

drink in (7) seven days by walking away & saying drink water in a hostle tone. see, (Southwell's affidavit ¶7).

385. G. Johnson & McMullen were deliberately indifferent to Plaintiff's health & medical when they realized Plaintiff's critical condition however, choose to abandon their medical oath, as well as the Plaintiff. Because of Plaintiff's altercation with a c/o they would not render aid nor take him to the infirmary even when they knew they should, see, (Southwell's affidavit.¶9)

386. Defendant(s) McMullen, G. Johnson, & Agostinelli knew of Plaintiff's high risk from not having any fluids or food see, (Ex. 123-124) as well as, him having chest pains yet choose to disregard Plaintiff's safety & health.

387. Agostinelli had every opportunity to intervene & provide a quick medical assessment. It was her duty to report the Plaintiff's chest pains that would have effectively rendered a EKG test down in the infirmary which would have giving cause to Plaintiff's critical state & perhaps pervented his ??? ?? physical injury.

388. McMullen & G. Johnson had every opportunity to intervene. They knew that an IV needed to be administered yet choose to disregard it. They knew ??? that stitches were needed but disregarded that as well. They knew that Plaintiff was in no condition to be left alone and be taken to the infirmary but thought better of it. Even something as simple as watching Plaintiff drink water would have been better then leaving him without even giving it a 2nd thought. see, (Heng's affidavit ¶4).

389. Defendant(s) Agostinelli, McMullen, & G. Johnson did not act in good faith, nor did they act in accordance with MSP policy. Agostinelli blantet disregard towards Plaintiff was evident in her hostle tone while maliciously walking away. This was corroborated by McMullen & G. Johnson when refused to

FAC-60

render medical or take him to the infirmary being prima facie a retalitory response for Plaintiff's psychotic break & altercation with a c/o, as is evident by their conversation in the dayroom that was overheard by several indivuals. see, (Southwell's affidavit ¶9). see also, (Pitman's declar ¶6).

390. Defendant(s) Agostinelli, McMullen, & G. Johnson violated Plaintiffs right to be free from cruel & unusual punishment under the Eighth Amendment. when they failed to protect Plaintiff's health & safety by leaving Miesmer in his current critical state of health knowing the excessive risk to his life due to his chest pains & severe dehydration--yet maliciously failed to act that resulted in physical injury to the Plaintiff's face.

## VIV. INJURIES

391. Due to the actions & omissions of defendant(s) Cozby, Jovanovich, Baltazar, Short, Burnett, Tate, Guillory, Roistad, & Kincaid--see, (FAC ¶¶55-84).consequently resulting in constitutional violations. see, (FAC Claims 1-7) having caused & created severe physical trauma, severe pain, & bodily disfigurement leading to irreparable damage. As a result, Plaintiff suffered weight loss, weight gain, fever, severe rectal & abdominal pain, indegestion, internal bleeding, fatigue, chest pains, & dizziness. Plaintiff was unable to exercise, go to yard (on most days), move around without pain or eat solid foods for almost six (6) months. Plaintiff was prescribed Procto foam to help stop the bleeding (Procto-foam is a canister that has to be inserted up the rectum twice a day). Plaintiff was prescribed a medical pureed diet & dental soft diet for five (5) months due to his stomach & rectal complications. Plaintiff was also prescribed Oneprazol, Pantoprazole, Bisoprolol, Oxeprazole, & Maloxicam to help battle the pain & stomach complications. see, (Ex. 121).

392. Due to the actions & omissions of defendant(s) Cozby, Jovanovich, Baltezar, Short, Burnett, Reisted, Tate, Guillory, & Kincaid--see, (FAC ¶¶55-84),consequently resulting in constitutional violations. see, (FAC Claims 1-7) having caused & created severe psychological trauma to consist of; PTSD, suicidal ideation, identity dissociation, paranoia, chronic depression, anxiety, nightmares & flashbacks causing Plaintiff to lose trust in the very system sworn to protect. Plaintiff is reminded of being sexually assaulted everytime he sees, hears, or is around his unit manager Baltezar and anyone else whom was involved. As a result, Plaintiff has started psych medications to consist of an anti-psychotic named Latuda & a psychotropic called Zoloft-- to help deal with sexually assaulted. Because of the retaliation that inevitably comes with filing a lawsuit in prison the Plaintiff has been taken off his medications several times cold-turkey. He has since then been perscribed a different formula of meds to consist of an anti-psychotic Abilify and a psychotropic Lamictal. There is a plan to reinstate his old formula of medicine Zoloft & Latuda soon. Plaintiff has additionally loss his sex drive & sense of manhood. He has started therapy bi-weekly to help him cope with the trauma that was created from being raped.

393. Due to the actions & omissions of defendant(s) Johnson, Salmonsen, Short, Burnett, Kincaid, & Reisted--see, (FAC ¶¶95-129) consequently resulting in constitutional violations. see, (FAC Claims 8-15) having caused more severe physical trauma, severe pain, & bodily disfigurement leading to irreparable damage. As a result, Plaintiff suffered weight loss, weight gain, fever, severe rectal & abdominal pain, indigestion, internal bleeding, fatigue, chest pains, & dizziness. Plaintiff was unable to exercise, go to yard (on most days), move around without pain, or eat solid foods for almost six (6) months. Plaintiff was prescribed Procto-foam to help stop the bleeding. (Procto-foam is a canister that has to be inserted up the rectum twice a day).

Plaintiff was prescribed a medical pureed diet & dental soft diet for five (5) months due to his stomach & rectal complications. Plaintiff was also prescribed Omeprazol, Pantoprazole, Bisoprolol, Omeprazole, & Meloxicam to help battle the pain & stomach complications.

394. Due to the actions & omissions of defendant(s) V. Johnson, Salmonsen Short, Burnett, Kincaid, & Reistad--see, (FAC ¶¶95-129) consequently resulting in constitutional violations. see, (FAC Claims 8-15) having further caused more severe psychological trauma to considt of; PTSD, suicidal ideation identity dissociation, paranoia, cronic depression, anxiety, nightmares, & flashbacks causing Plaintiff to lose trust in the very system swore to protect. Plaintiff is reminded of being sexually assaulted everytime he sees, hears, or is around his unit manager Baltezar & anyone else that was involved. As a result, Plaintiff has started psych medications to consist of an anti-psychotic named Latuda & a psychotropic called Zoloft, to help him deal with being sexually assaulted. Because of the retaliation that inevitably comes with filing a lawsuit in prison the Plaintiff has been taken off his medications several times cold-turkey. He has since then been perscribed a different formula of meds to consist of an anti-psychotic Abilify & a psychotropic called Lamictal. There is a plan to reinstate his old formula of medicine Zoloft & Latuda soon. Plaintiff has additionally loss his sex drive & sense of manhood. He has started therapy bi-weekly to help him cope with the trauma that was created from being raped.

395. Due to the actions & omissions of defendant(s) Larkins & Hamilton-- see, (FAC ¶¶161-170) consequently resulting in constitutional violations. see, (FAC Claim 17) having created & caused physical injury to Plaintiff's leg leaving a three (3) inch scar for the remainder of his life being a constant reminder of his sexual trauma and the amount of pain & neglect that followed. For

for two (2) hours Plaintiff endured severe pain & trauma that very much took a toll on his psyche.

Additionally, the acts & omissions of defendant(s) Larkins & Hamilton amounted to psychological & emotional trauma to consist of; PTSD, suicidal ideation, paranoia, cronic depression, anxiety, wothlessness, & nightmares causing Plaintiff to lose trust in the very system swore to protect. Between the comments made and the omissions/acts of Larkins & his accomplice Hamilton-Claim 17 can only be viewed in the light of a type of suicide aid & assist. This very much has placed Plaintiff in a constant state of fear for his life. Plaintiff has stopped living as a prisoner since 10/29/24 and has been living as a hostage ever since.

396. Due to the actions & omissions of defendant(s) Jovanovich, Short, Baltezar, Guillory, Tate, Reistad, Burnett, & Kincaid--see, (FAC ¶¶132-136) consequently resulting in constitutional violations. see, (FAC Claim 16) having further caused a serious delay & deprivation of medical attention that was induced by threats, harassment, & a "paper restriction". This display of hostle oppression undoubtedly further exacerbated Plaintiff's health leading to  severe physical trauma, severe pain, & bodily disfigurement leading to irreparable damage. see, (FAC ¶391)

Additonally, the acts & omissions of defendant(s) Jovanovich, Short, Baltezar, Guillory, Tate, Burnett, & Kincaid sinificantly further compounded & exacerbated Plaintiff's mental health having been placed in a critical state of health that was completely disregarded over the weight of defendant(s) .. occupation, reputation, & well-being. Thus resulting in Plaintiff's; PTSD, suicidal ideation, identity dissociation, paranoia, cronic depression, anxiety; worthlessness, & nightmares driving Plaintiff to a suicide attempt having been placed in a constant state of fear & anxiety losing complete trust in the very system swore to protect.

397. Due to the acts & omissions of defendant(s) of RN's Agostinelli, McMullen, & G. Johnson--see, (FAC ¶¶137-151) consequently resulting in constitutional violations. see, (FAC Claim 18) having further caused a serious delay & deprivation of medical attention that was induced by neglect, malice, and sadistic retaliation. This deliberate indifference undoubtedly is the direct result of Plaintiff's scar on his face & the amount of physical pain & trauma that was endured by such injury. The extreme state of dehydration that led to such complications only adds to the level of unnecessary pain Plaintiff endured.

Additionally, the acts & omissions of defendant(s) Agostinelli, McMullen, and G. Johnson amounted to psychological & emotional trauma to consist of; PTSD, suicidal ideation, paranoia, cronic depression, anxiety, worthlessness, and nightmares driving Plaintiff to a suicide attempt having been placed in a constant state of fear & anxiety over his very life losing complete trust in the very system swore to protect.

## X. RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter an order:

398. Awarding Plaintiff damages, in an amount yet to be deduced from the evidence, but in no event in an amount less than $5,000,000.00, jointly & severally against all defendants.

399. Awarding Plaintiff compensatory damages, in a amount yet to be deduced from the evidence, jointly & severally against:

Defendant(s) Jodi Cozby, Vaughn Johnson, Sam Jovanovich, Beau Baltezar, Jim Salmonsen, Samuel Short, Dakotah Reisted, Tre Kincaid, Roger Guillory Dusty Tate, Timothy Burnott, Christian Larkins, Jalen Hamilton, Heather Agostinelli, Gina Johnson, and Matheu McMullen for the unnecessary

deterioration of Plaintiff's physical, mental, & emotional condition & consequential pain & suffering.

400. Awarding Plaintiff punitive damages, in an amount yet to be deduced from the evidence, jointly & severally against:

Defendant(s) Jodi Cozby, Vaughn Johnson, Sam Jovanovich, Beau Baltezar, Jim Salmonsen, Samuel Short, Dakotah Reistad, Tre Kincaid, Roger Guillory Dusty Tate, Timothy Burnett, Christian Larkins, Jalen Hamilton, Heather Agostinelli, Gina Johnson, and Mathew McMullen for the unnecessary deterioration of Plaintiff's physical, mental, & emotional condition & consequential pain & suffering.

401. Awarding Plaintiff nominal damages, in a amount yet to be deduced from the evidence, jointly & severally against:

Defendant(s) Jodi Cozby, Vaughn Johnson, Sam Jovanovich, Beau Baltezar, Jim Salmonsen, Samuel Short, Dakotah Reistad, Tre Kincaid, Roger Guillory Dusty Tate, Timothy Burnett, Christian Larkins, Jalen Hamilton, Heather Agostinelli, Gina Johnson, and Mathew McMullen for the unnecessary deterioration of Plaintiff's physical, mental, & emotional condition & consequential pain & suffering.

402. Awarding Plaintiff presumed damages, in an amount yet to be deduced from the evidence, jointly & severally against:

Defendant(s) Jodi Cozby, Vaughn Johnson, Sam Jovanovich, Beau Baltezar, Jim Salmonsen, Samuel Short, Dakotah Reistad, Tre Kincaid, Roger Guillory Dusty Tate, Timothy Burnett, Christian Larkins, Jalen Hamilton, Heather Agostinelli, Gina Johnson, and Mathew McMullen for the unnecessary deterioration of Plaintiff's physical, mental, & emotional condition & consequential pain & suffering.

403. Awarding Plaintiff Attorneys' Fees.

404. Any other relief this Court may deem just and proper.

405. Trial by jury is hereby demanded on all claims alleged herein, and the parties are hereby given notice, pursuant to Fed. R. Civ. P. 38(a)-(c).

Respectfully submitted this 7th day of October, 2025.

Branden Miesner, Plaintiff pro se

## XI. APPENDIX

### GRIEVANCES

#100 Nurse Cozby Cavity Search---5pp---21863

#101 Deer Lodge Hospital Cavity---2pp---21916

#102 Supervisors Cavity---3pp---21915

#103 PREA Investigator---1p---N/A

#104 RN Heather Agostinelli---5pp---21952

#105 RN McMullen & G. Johnson---1p---21953

#106 Freeze to Death---3pp---22195

#107 C/O Hamilton---3pp---22059

#108 Lt. Larkins---3pp---22058

#109 RN Halco Skogan---1p---22110

#110 Dr. Sonneman delay in meds---2pp---22026

#111 Excessive Searches---1p---N/A

#112 No Showers---2pp---22191

#113 Paper Restriction---3pp---21954

#114 Conditions of Confinement---2pp---22060

#115 SRT Malice Glove Gesture---2pp---22350

#116 Records, False, Missing---4pp---22442

#161 Emergency Grievance---1p---N/A

#162 RN Gabi Pill Pass---1p---22712

#163 RN Rachael Maliciousness---1p---22714

### DOCUMENTS

#117 Jodi Cozby Progress Note---1p

#118 False Report to Hospital---1p

#119 Bloody Mucosa---1p

#120 Instructions to Return to ER---1p

FAC-68

#121 Medication List---3pp

#122 Myranda Hardy Psych Report-3pp

## MEDICAL KITES

#123 60 Hours No Food/Water---1p---11/2/24

#124 5 Days No Food/Water--1p---11/4/24

#125 Cavity Symptoms---1p---11/21/24

#126 Requesting Trauma Therapy---1p---11/28/24

#127 Symptoms Worsening---1p---11/29/24

#128 Soft Diet;Symptoms Worse---3pp---12/1/24

#129 Scope Exam Request---1p---12/2/24

#130 Confirming/Requesting Order for Diet/Meds---1p---12/3/24

#131 Asking About Diet/Meds---1p---12/4/24

#132 Not Eating due to Pain---1p---12/4/24

#133 Meds Reminder---1p---12/5/24

#134 Procto Foam Reminder--1p---12/6/24

#135 Symptoms Worsening;Reminder Procto Foam---1p---12/9/24

#136 Request Pureed Diet---1p---12/18/24

#137 Request MRI;Symptoms---1p--12/21/24:

#138 Medical Denial---1p---12/24/24

#139 Request Faster Colonoscopy---1p---12/26/24

#140 Reminder for Refil on Meds/Foam--1p---12/26/24

#141 Asking About Not Being Seen---1p---1/1/25

#142 Reminder Refil on Meds/Foam---1p---1/1/25

#143 Reminder Refil on Procto Foam---1p---1/6/25

#144 Requesting Pureed Diet Back Because Pain---1p---3/15/25

## AFFIDAVITS & DECLARATIONS

#145 Branden Kiesner's 1st Affidavit---3pp

FAC-69

#146 Theodore Heng's Affidavit---3pp

#147 John Southwell's Affidavit---4pp

#148 Cody Flesch's Declaration---2pp

#149 Officer Trabis Baily Declaration---2pp

#150 Officer Hunter Smith Declaration---2pp

#151 Officer Reed Pitman Declaration---2pp

#152 Branden Miesner 1st Declaration---2pp

#153 Branden Miesner's 3rd Affidavit---3pp

#154 Rainbow Peter's 1st Declaration---3pp

#155 Dallas Andrews Declaration---3pp

#156 John Southwell's Declaration---2pp

#157 Branden Miesner's 4th Affidavit---2pp

#158 Rainbow Peter's 2nd Declaration---2pp

#159 Richard Moser's Declaration---2pp

#160 Keagan Shearer's Declaration--2pp


MSP POLICIES

#164 MSP 3.1.17a SEARCHES---10pp

#165 MSP 3.1.17b CONTRABAND CONTROL---6pp

#166 MSP 3.1.17C BODY SCANNERS---6pp

#167 MSP HS G-04.0 FORENSIC INFORMATION---1p

#168 MSP 1.1.17 PREA---18pp

## XII. VERIFICATION

Pursuant to 28 U.S.C. § 1746, I Branden C. Miesmer, declare & verify, under penalty of perjury under the laws of the United States of America, that I have read the foregoing & that it is true & correct to the best of my knowledge & belief.

DATED this 7th day of October, 2025.

( Branden Miesmer, Plaintiff pro se

Branden C. Miesmer
MSP AO#3018748
700 Conley Lake Road
Deer Lodge, MT 59722
Plaintiff, pro se

# NOTARIAL CERTIFICATE

## Acknowledgment

State of _MONTANA_

County of _POWELL_

The attached record was acknowledged before me on _October 7 2025_

(Date)

by _BRANDEN MIESNER_

(Name of Signer(s))

TANKA KEYHAZAN
NOTARY PUBLIC for the
State of Montana
Residing at Deer Lodge, Montana
My Commission Expires
January 22, 2028

[SEAL]

_Tanka Keyhazan_ (signature)

(Notary Signature)

[Affix stamp above]

This certificate has been attached to the _FIRST AMENDED Complaint_

(Type of record or document)

consisting of _72_ page(s), dated _October 7 2025_.

Any evidence that this certificate has been detached or removed from the above described document may render the notarization invalid or unacceptable.

REV 10/19                                                            1-5-610(1), MCA

## CERTIFICATE OF SERVICE

I hereby certify that on October 7th, 2025, a copy of the foregoing was submitted to the MSP librarians for E-filing with the Court and service upon the following people by the following means:

__1__  CM/ECF

__2__  CM/ECF

__3__  CM/ECF

1. Clerk, U.S. District Court

2. Iryna O'Connor
   Risk Management Tort Defense
   iryna.oconnor@mt.gov

3. Jori Quinlan
   Hall Booth Smith, P.C.
   jquinlan@hallboothsmith.com


Branden Miesmer / Plaintiff pro se

FAC-72