IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BRANDEN MIESMER,<br><br>Plaintiff,<br><br>vs.<br><br>JOVANOVICH, ET AL.,<br><br>Defendants. | Cause No. CV 25-52-H-DWM<br><br>ORDER |

Defendant Vaughn Johnson has moved to dismiss Plaintiff Branden Miesmer's suit against him, for failure to state a claim. (Doc. 40.) The motion is fully briefed and is granted, in part, and denied, in part.

## I. BACKGROUND

Plaintiff Miesmer is an inmate at Montana State Prison, Deer Lodge, Montana. (Doc. 27.) Briefly, Miesmer's claims arise from an incident when he was searched on suspicion of having hidden a weapon or part thereof in his rectum. Miesmer alleges he was forcibly and brutally searched, despite denying there was anything there, in violation of his Fourth and Eighth Amendment rights. (Doc. 27 at 7.)

When the object could not be retrieved by prison staff, Miesmer was taken to Deer Lodge Hospital. (Doc. 27 at 16.) At the hospital, Miesmer was seen by Defendant Dr. Vaughn Johnson in the emergency room. Miesmer alleges that he

1

immediately "refused medical attention," admitted that there was an address book inside him, and asked to have time to pass it himself. (Doc. 27 at 17.) At some point, an x-ray revealed a "large nonradiopaque tubular rectal foreign body", which Miesmer described as approximately five inches long. (Doc. 2-1 at 1 – 2.)[1] Miesmer was not able to remove the object himself. Johnson told Miesmer that he was going to "administer a cavity search." (Doc. 27 at 17.)

Johnson manually attempted to locate the item, unsuccessfully, causing Miesmer discomfort. Miesmer was given a sedative. Johnson then used a speculum in order to get a better view to remove the item, but he could not see it. (Doc. 27 at 18.) Johnson stopped, and Miesmer was discharged for return to the prison, with instructions that he should return to the emergency department if he had worsening symptoms. (Doc. 27 at 18.) (Miesmer's description of these events is considerably more detailed, but these facts suffice as background for the discussion that follows.)

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, *Hospital Bldg. Co. v. Rex Hospital*

---

[1] This language is taken from the discharge notes attached to Miesmer's original Complaint, which is also referred to but not attached to his Amended Complaint. (Doc. 27 at 18.) The parties dispute the import of this document, as discussed below. The information is conveyed here to clarify that there was, in fact, a foreign body, despite Miesmer's previous denials.

2

*Trustees,* 425 U.S. 738, 740, (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, *reh'g denied,* 396 U.S. 869 (1969). A plaintiff's complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although the court must accept as true the plaintiff's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.,* 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and footnotes omitted).

### III. ANALYSIS

Johnson's motion to dismiss asserts three contentions: Miesmer has failed to allege an actionable federal claim against Johnson because Johnson is not a state actor, the court should decline jurisdiction over Miesmer's state law claims, and any medical malpractice claims against Johnson are barred by Miesmer's failure to complete Montana's Medical Legal Panel process. (Doc. 41 at 2.)

In response, Miesmer contends, first, that Johnson's motion is improper, because Miesmer's Complaint was ordered served by the Court. (Doc. 44.) Second, Miesmer disputes whether the Court should review Johnson's treatment notes and asks the Court to take judicial notice of several Montana State Prison policies. (Doc. 44 at 11.) Miesmer then extensively details the facts that he alleges support the substance of his claims, which is irrelevant if, as Johnson argues, he is not a proper defendant on a federal constitutional claim. (Doc. 44 at 12 – 16.) The crux of this motion is discussed towards the end of Miesmer's brief, when he addresses Johnson's arguments regarding when a private person can be considered a state actor under 42 U.S.C. § 1983. If Johnson is not a state actor, Miesmer cannot state a claim for a violation of his constitutional rights against Johnson. Therefore, that is where the analysis begins.

### A. State Actor

As relevant here, 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State […], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[..]

Therefore, a claim under § 1983 requires: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately

4

caused (3) by conduct of a person (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (internal quotation marks omitted). Defendant Johnson moves to dismiss, in part, because he was not "acting under color of state law" when he treated Miesmer.

A defendant acts under color of state law when he or she has "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations omitted). "The state action inquiry boils down to this: is the challenged conduct that caused the alleged constitutional deprivation "fairly attributable" to the state?" *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020) (citing *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013).) The Ninth Circuit has recognized at least four different tests that aid in identifying state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citation omitted). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020).

"Before we can answer the question of whether Defendants acted under color of law, we must identify the specific conduct of which the plaintiff complains." *Rawson*, at 747 (internal citations and quotations omitted.) The

5

analysis here hinges on whether that specific conduct--Johnson's attempted removal of the object--was medical care or a search. Johnson construes it as medical care. Miesmer calls it a search, and the Court must accept the allegations of Miesmer's Amended Complaint as true.

The allegations of the Amended Complaint regarding Johnson's actions are that Johnson said he was going to "administer a cavity search", and Miesmer "plead[ed] with Johnson not to do this". (Doc. 27 at 17.) Johnson proceeded, and over Miesmer's continued objection, said that if Miesmer did not comply, "he would go to Missoula where it would be much worse." When Johnson said this, the three Montana State Prison personnel who were there guarding Miesmer all stood up, "as if to enforce this threat." These facts allege the conditions of a search, and not of consensual medical care.

Against this background, the question is whether Johnson's actions thus make him a state actor under one of the tests outlined above. The public function test asks whether the challenged action is a traditional and exclusive function of the state. *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 157–58 (1978). "Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Wright v.*

*Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1124 (9th Cir. 2022) (citing *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (citations omitted).)

A search for evidence of a crime (or to ensure security in a prison) is a state function. There are other contexts in which a person might submit to a search, such as of an employee locker, or a dorm room, but no other authority has the ability to order a cavity search over an individual's objection. Thus, "any deprivation effected by Defendants here was in some sense caused by the State's exercise of its right, pursuant to both its police powers and *parens patriae* powers, to deprive [Plaintiff] of his liberty…" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 752 (9th Cir. 2020). In *Rawson*, the plaintiff was a civilly committed person, but the analysis is similar. "[I]f Defendants misused [their] power by demonstrating deliberate indifference to [the Plaintiff's] rights […], "the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to" search Miesmer. *Rawson*, 975 F.3d at 752 (citations omitted).

If Miesmer had come to the hospital with a foreign object in his rectum and asked for it to be removed, that clearly would have been medical care. If an unincarcerated person came to the emergency room with a foreign object in his rectum and refused to allow its removal, removing it would likely be medical malpractice, but it would not be a search or an exercise of state power. In this circumstance, based only on the allegations of the

7

Complaint, Miesmer came to the hospital for the purpose of a search and was subsequently searched, over his objection.

This conclusion does not foretell anything related to Johnson's ultimate liability. A search of Miesmer in the prison context will be scrutinized under constitutional standards, which are fact intensive. In addition, development of the facts may eventually show that Johnson was, in fact, only providing medical care, or his actions were not a search, and he is not subject to a § 1983 claim. At this juncture, however, Johnson's motion to dismiss Miesmer's § 1983 claim must be denied.

### B. State Law Claims

Johnson also contends that Miesmer's state law claims against him should be dismissed because they are medical malpractice claims that have not been properly presented to Montana's Medical-Legal Panel. (Doc. 41 at 15.) Miesmer responds that his claims are not medical malpractice at all, because he refused treatment, and, thus, any "treatment," was battery. (Doc. 44 at 20.) Johnson replies that, under Montana law, even medical battery would be considered "malpractice." (Doc. 46 at 11.)

> Mont. Code Ann. § 27-6-103(5) reads:
>
> [A] claim or potential claim of a claimant against a health care provider for medical or dental treatment, lack of medical or dental treatment, or other alleged departure from accepted standards of health care that proximately results in damage to the claimant,

8

>whether the claimant's claim or potential claim sounds in tort or contract, and includes but is not limited to allegations of battery or wrongful death.

Montana defines the claims subject to its medical malpractice statute broadly, to include not only negligence, but intentional torts and contract claims. As the statute is written, it is difficult to imagine a claim against a medical or dental provider, related to conduct in the treatment context, that would not fall under its scope.

Miesmer's potential constitutional claims against Johnson arise only because, for purposes of this preliminary motion, Johnson can be construed as performing a state function of a search for contraband. As to any other state law claim related to medical treatment—even if it is battery, by conducting treatment that the patient to which the patient does not consent—that claim is subject to Montana's Medical Legal Panel Act. As such, these claims must be dismissed, because Miesmer failed to bring the claims to the medical legal panel prior to filing them in court. Mont. Code Ann. § 27-6-701. *Running Crane v. United States*, 634 F. Supp. 3d 946, 955–56 (D. Mont. 2022) (citing Mont. Code Ann. § 27-6-701) ("The MMLPA requires plaintiffs to file an administrative complaint and obtain a decision from the MMLP before initiating a lawsuit in federal court."). As a result, Miesmer's state law claims against Johnson must be dismissed.

However, the dismissal of Miesmer's state law claims is without prejudice to refiling, should he timely complete the administrative procedure.

Accordingly, it is HEREBY ORDERED:

1. Defendant Johnson's motion is DENIED, in part, and GRANTED, in part. (Doc. 40.) His Answer must be filed according to Fed. R. Civ. P. 12.

2. Miesmer's state law claims against Johnson are DISMISSED, without prejudice.

3. At all times during the pendency of this action, Plaintiff must immediately advise the Court and opposing counsel of any change of address and its effective date. Failure to file a Notice of Change of Address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

DATED this 15th day of December, 2025.

                                            Donald W. Molloy, District Judge
                                            United States District Court