IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BRANDEN MIESMER, | Cause No. CV 25-52-H-DLC |
| Plaintiff, | |
| vs. | ORDER |
| JOVANOVICH, ET AL., | |
| Defendants. | |

Plaintiff Branden C. Miesmer has moved for a preliminary injunction. (Doc. 66.) Defendants have responded. (Docs. 72 and 85.) The motion is fully briefed. Miesmer's motion is denied. Miesmer has also filed two motions related to service of his Second Amended Complaint. (Docs. 80 and 88.) Those motions are denied as moot.

## I.   MOTION FOR PRELIMINARY INJUNCTION

A. Background

Plaintiff Miesmer is an inmate at Montana State Prison ("M.S.P."), Deer Lodge, Montana. (Doc. 2.) The claims in Miesmer's Complaint arose from an incident when he was searched on suspicion of having hidden a weapon or part thereof in his rectum, and what he characterizes as an ensuing lack of medical care. Miesmer alleged he was brutally searched on more than one occasion, in violation

1

of his Fourth and Eighth Amendment rights. (Doc. 27 at 7.) He also alleged state law tort claims, all related to the forcible searches and his subsequent medical care. Miesmer did not seek injunctive relief. (Doc. 2 at 61 – 62.) Miesmer's Complaint did not mention anything about his classification or housing at M.S.P.

Miesmer has amended his Complaint twice. (Docs. 27 and 63.) The operative Second Amended Complaint alleges twenty claims, including for Eighth Amendment failure to protect, denial of medical care, and conditions of confinement, First Amendment retaliation, Fourth Amendment illegal search and seizure, as well as several related state law claims. (Doc. 63.) The Second Amended Complaint seeks various forms of money damages, and injunctive relief "against Def. MT Dep't of Corr., entering an order to install emergency intercom mics in every cell in both RHU and SAU solitary confinement." (Doc. 63 at 65.)

Miesmer filed this motion for a preliminary injunction on March 20, 2026. Miesmer's motion seeks a preliminary injunction that would "protect [Miesmer] from harassment, and retaliation" and house him in conditions that "resemble[ ] general population privileges…" (Doc. 66 at 1.) In the alternative, he seeks transfer to another facility in Montana. Miesmer's motion is supported by an affidavit and a brief. (Docs. 66-1 and 67.)

B.     Standard

2

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original.) The party seeking an injunction must show that: 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in their favor; and 4) an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The first factor "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Thus, a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

The Prison Litigation Reform Act ("PLRA") further constrains the Court's authority to enter an injunction.

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system.

18 U.S.C. § 3626(a)(2). But a court may not deny a preliminary injunction motion and thereby "allow constitutional violations to continue simply because a remedy would involve intrusion into" an agency's administration of state law. *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) (internal citation omitted).

Finally, an injunction that changes the status quo, rather than preserving it, is particularly disfavored. When the requested preliminary injunctive relief "orders a responsible party to take action," as opposed to "simply maintaining the status quo," the preliminary relief is characterized as mandatory and is "subject to a more demanding standard." *N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024) (distinguishing a "mandatory injunction" from a "prohibitory injunction"). "To obtain a mandatory injunction, […] a plaintiff 'must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed.' " *Reykdal*, 102 F.4th at 992 (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (emphasis in original).)

C. Analysis

Miesmer's brief in support of his motion speaks in very general terms, claiming that he has been treated unconstitutionally in various ways. (Doc. 67 at 1 – 2.) Reading between the lines, Miesmer's motion and brief seek placement in a more lenient environment than his current placement in restricted housing. He ultimately concludes that he "has been a victim of gross neglect and clear denial of both medical and mental health services[.]" (Doc. 67.) Miesmer's motion is supported by a detailed affidavit that recounts events from July 18, 2025 until right before he filed it, on March 18, 2026, all related to his mental health diagnoses,

4

treatment, suicide attempts, and housing assignments. (Doc. 66-1.) To be sure, the picture Miesmer paints is one of great mental and physical hardship.

Miesmer's brief does not address the relevant *Winter* factors directly. (Doc. 67 at 2.) The brief focusses on his allegations of the likeliness of irreparable harm and his likelihood of success on the merits. Miesmer relies on a Montana state law, Mont. Code Ann. § 53-30-701, which governs restrictive housing in Montana corrections facilities. Miesmer cites a series of housing requirements for inmates who have been identified as seriously mentally ill, as Miesmer has been. (Doc. 67 at 3 and 7.) Miesmer also relies on case law asserting that extended segregation can be particularly damaging to mentally ill inmates. (Doc. 67 at 4.) Miesmer concludes that his evidence proves that "defendants have completely disregarded Plaintiff's health, life and safety." (Doc. 67 at 5, citing his affidavit.) Miesmer construes his segregated housing assignments as "a plan to completely break, destroy, and even kill Plaintiff for being mentally ill and for advocating for mental health all the while filing lawsuits in the name of justice and his constitutional rights." (Doc. 67 at 8.)

In response, Defendants' first argument is that Miesmer's request is impermissibly vague. (Doc. 85 at 8.) Miesmer does not specify whose conduct he wishes to enjoin, and what exactly he wants defendants to do, other than protect him from harassment and provide housing and conditions in accordance with law.

(Doc. 85 at 8.) As a result, Miesmer's request is not "narrowly drawn," as required by 18 U.S.C. § 3626(a)(2).

Defendants then address the *Winters* factors. First, they contend that Miesmer has not met his burden to show he is likely to succeed on the merits of his claim, in part because of the mismatch between his twenty claims in his Second Amended Complaint, and his request for injunctive relief. (Doc. 85 at 9 – 10.) That is, his statements about being severely mentally ill, and his request for housing related to that, do not match up with or remedy his claims in his Second Amended Complaint. Defendants also assert that Miesmer does not, in fact, have any constitutional right to a particular housing assignment, and thus, his current placement does not violate the Eighth Amendment. *Id.* Defendants also deny that Miesmer has established he will suffer irreparable harm if he does not get the relief he seeks, in large part by filing exhibits that show the medical care Miesmer is currently receiving. *Id.* Finally, Defendants conclude that the balance of equities and public interest do not way in favor of a preliminary injunction, because Miesmer is a "highly dangerous and volatile inmate" whose placement should be left in the hands of the institution. (Doc. 85 at 11.)

In his reply brief, in response to Defendants' contention that Miesmer's request is not narrowly drawn, Miesmer clarifies (or revises) his request for the Court to "issue a [sic] order mandating the placement of Plaintiff in the SMI block

in SAU." (Doc. 89 at 5.) In the alternative, he seeks transfer to the Montana State Hospital. *Id*.

### 1. Narrowly-drawn relief

The analysis of Miesmer's motion must begin at the end, with the relief he seeks. Defendants are correct that his initial request to be "protected" and treated in "accordance with State and Federal law" is far too vague, because it would provide insufficient guidance to Defendants as to what conduct might violate the injunction. Presumably, Defendants are already aware of their obligations to treat Miesmer in a constitutionally and legally sufficient manner.

Miesmer's narrowed request, for transfer to the M.S.P. unit for mentally ill inmates, is specific enough to administer without difficulty, but there are troubles with it as a remedy as well. First, as Defendants point out, Miesmer has a long and ongoing history of violence in the facility. (Doc. 85-5.) Miesmer asserts that Montana law mandates that he cannot be placed in restricted housing solely because of behavior that results from his mental illness. (Doc. 67 at 8.) Whether the violence is a result of Miesmer's illness, as he contends, is beyond the expertise or scope of this Order. On the record, the Court has no grounds on which to restrain Defendants' ability to maintain security and safety in the prison. Any request for a change in Miesmer's classification or housing would tread on the expertise of Defendants in that regard.

2.  Likelihood of Success on the Merits

Miesmer asserts twenty claims in his Second Amended Complaint, but the argument in his brief in support of his likelihood to succeed on the merits focuses only on his Eighth Amendment claims of failure to protect and, perhaps, for lack of medical care. (Doc. 67 at 5 – 8.) As Defendants contend, the connection between his request for injunctive relief and the claims in his Second Amended Complaint is opaque. Nonetheless, Miesmer asserts he will prevail on his Eighth Amendment claim that "Plaintiff was purposely placed in tortuous situations fully knowing the serious risk and hazard it placed upon his mental health." (Doc. 67 at 5.)

Miesmer primarily relies on *Farmer v. Brennan*, 511 U.S. 825 (1994), which elaborates the standards for an Eighth Amendment claim.

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'[.] …
> The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'

*Farmer*, 511 U.S. at 834 (citations omitted). Miesmer quotes the appropriate Eighth Amendment standard and asserts that his treatment has fallen below that standard, but he cites no evidence to support his claims. The affidavit attached to his motion is a lengthy personal statement about his experience at Montana State

8

Prison, but it is not supported by any other evidence. Affidavits may be considered evidence at the preliminary injunction stage. *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 729 (9th Cir. 2018) But Miesmer never cites the affidavit in his brief. Miesmer's Second Amended Complaint includes over 240 pages of exhibits, including various affidavits, grievances, etc., but it is not the Court's job to comb through those documents looking for evidence to prove Miesmer's claims. In his reply brief, Miesmer 'reference[s] and incorporate[s]" an affidavit and various documents attached to his reply brief. (Doc. 89 at 6.)  Those documents do not show he will prevail on his claim of an ongoing Eighth Amendment violation.

Miesmer also states that he will withhold a certain amount of his evidence until trial, in which case, he cannot establish at this point that he is likely to prevail with that evidence. (Doc. 89 at 5.) Most of the evidence that is attached to his reply brief supports his Fourth Amendment claim against an unreasonable search, which was the subject, in part, of Defendant Vaughn Johnson's motion to dismiss, doc. 35., but is not the basis for his preliminary injunction. In any event, Miesmer's use of this evidence, here, is confusing. Miesmer appears to deny that he had put contraband up his rectum. (Doc. 89 at 6 – 7.) But the evidence in the record shows that he did, and even Miesmer's reply brief is ambiguous on this point, stating this was a "fabricated event," about a weapon "that was surrendered and not secreted in Pl.'s rectum," but then, on the next page, "Pl. was willing to comply by trying to

pass the item..." (Doc. 89 at 6 - 7.) To be fair, the attached affidavits of the detention officers regarding the October 29, 2024 search incident and its motivations are damaging and lend support to some of Miesmer's claims. (Doc. 89-1 at 4 – 11.) But all of that evidence relates to the prior search incidents and not the Eighth Amendment conditions claim that underlie his request for the injunction Miesmer seeks now, movement to another unit. If Miesmer establishes at trial or summary judgment that those prior events occurred as he alleges, he will be entitled to damages. But no mandatory injunctive relief at this point can change whatever occurred in October, 2024.

There is insufficient evidence as to his current treatment to show that he is likely to succeed on the merits of his claim that he is being treated in violation of the Eighth Amendment. His affidavits show that he has attempted suicide, has acted irrationally and violently, has refused food and medications, and has otherwise suffered hardship. The evidence produced by the Defendants, however, shows that he is receiving mental health care and medications, and that he has been an ongoing security threat. Though "[p]reliminary relief is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," that is when the injunction will "merely to preserve the relative positions of the parties pending further proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 96 (2025) (internal citations and quotations omitted.) In this instance,

when Miesmer is seeking a change of the status quo, he must, as stated above, "establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed.' " *Reykdal*, 102 F.4th at 992 (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)) (emphasis in original). Miesmer has not made this showing.

### 3.  Likelihood of Irreparable Harm

Miesmer's motion, brief, and reply brief all focus on his mental health and his assertion that he is likely to suffer irreparable harm, possibly in the form of death, if he is not transferred to the mental health unit. His most compelling position, in this respect, is that he has attempted suicide on multiple occasions. However, the countervailing evidence provided by Defendants show that Miesmer is receiving regular medical and psychiatric care, and he is subject to M.S.P.'s Suicide Risk Management and Intervention policy. (Doc. 85 at 11.)

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A "showing of a mere possibility of irreparable harm is not sufficient under *Winter*." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1198 (9th Cir. 2024).

Miesmer has failed to establish the likelihood of irreparable harm if he is not moved to another unit.

4. The Balance of Equities/Public Interest

"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940 (9th Cir. 2020). In this case, the balance of the equities and the public interest weigh against an injunction.

Given that the other factors weigh against issuance of an injunction, the deference owed to the administrative expertise of prison staff ends the analysis. Miesmer has not shown he is likely to prevail on his Eighth Amendment claim, and his record of infractions and impending criminal trial for attempted deliberate homicide show that Defendants have reason to keep him in close control to protect staff and other inmates. The public interest weighs against an injunction.

Accordingly, Miesmer's motion for a preliminary injunction is denied. None of this predetermines anything about how Miesmer may fare at trial, if he can provide more evidence to support his position regarding his current or historical conditions of confinement or his other claims.

## II.    MOTIONS REGARDING SERVICE

Miesmer named two defendants in his Second Amended Complaint that had not been previously named, the Montana Department of Corrections, and Dr. Cory

Sonneman. He filed two motions to get these defendants served, one to request waiver of service, and one to compel service. (Docs. 80 and 88.) Both Defendants have answered the Second Amended Complaint. (Doc. 87.) Accordingly, Miesmer's motions are denied as moot.

Accordingly, it is HEREBY ORDERED:

1.    Miesmer's motion for a preliminary injunction is DENIED. (Doc. 66.)

2.    Miesmer's motions for service are DENIED. (Docs. 80 and 88.)

3.    At all times, Miesmer must update the Court and opposing counsel with any changes to his address. Failure to do so may result in dismissal for failure to prosecute. Fed. R. Civ. P. 41.

DATED this 26th day of May, 2026.

Dana L. Christensen, District Judge
United States District Court